*In re* EDDY ESTATE.

APPEALS BY CYNTHIA MILLS CLEVELAND.

1. TRUSTS—ACCOUNTS—TRUSTEE'S FEES—JURISDICTION OF PROBATE COURT.

Probate court *held*, to have jurisdiction to hear and allow accounts and fees of testamentary trustee of trust set up in will probated in same court after testamentary estate had been closed therein.

2. SAME—TRUSTEE—FRAUD—NEGLIGENCE—EVIDENCE.

Claim of fraudulent and negligent conduct on part of testamentary trustee in the administration of the trust *held*, not sustained, under record presented.

3. STATUTES—AMENDMENT—PROCEDURE.

Changes in a statute affecting procedure in litigating a matter apply to existing proceedings theretofore commenced (PA 1939, No 288, ch 4, § 33, as amended by PA 1947, No 50).

4. APPEAL AND ERROR—CIRCUIT COURT—PROBATE COURT.

The scope of an inquiry on appeal from an order of the probate court is limited to the matters raised by the notice of appeal and reasons assigned in support thereof, the hearing in the circuit court not being a hearing *de novo*.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 54 Am Jur, Trusts §§ 507, 527.
[2] 54 Am Jur, Trusts §§ 300, 311, 321.
[3] 50 Am Jur, Statutes § 468.
[4] 3 Am Jur, Appeal and Error § 812.
[5] 54 Am Jur, Trusts §§ 512, 532.
[6] 54 Am Jur, Trusts § 523.
[7] 54 Am Jur, Trusts § 527.
[8] 54 Am Jur, Trusts § 509.
[8] Necessity of proof by trustee that charges or expenses for which he claims credit upon an accounting were proper disbursements. 13 ALR 364.
[9-11] 54 Am Jur, Trusts § 530.
[12] 14 Am Jur, Costs § 71.

5. TRUSTS—ACCOUNTS—FEES—ORDERS—RECITALS—WAIVER OF DE-
FICIENCIES—STATUTES—AMENDMENT.

An appellant who failed to question the recitals in probate court
order approving a testamentary trustee's account and fixing
his fee, made while statute required recital in detail of the
extraordinary services for which the allowance of an extraor-
dinary fee was made and of the reasons for considering the
case an unusual one and void if the order did not contain
such recitals, waived the deficiencies, especially after statute
was amended to remove provision voiding an order not con-
taining the recitals (PA 1939, No 288, ch 4, § 33, as amended
by PA 1947, No 50).

6. SAME—ATTORNEY FEES—REMAINDERMAN.

Attorney's fees for trust remainderman appellant's counsel, sought
in the amount of $46,000 for services rendered incident to testa-
mentary estate and later trust estate matters in courts other
than the one in which the fees were sought to be allowed, were
properly denied.

7. SAME—FEES—SUPREME COURT—DISCRETION OF COURT.

Only in case of manifest abuse of discretion on the part of a
circuit court in reviewing the allowance of attorney, executor
and trustee fees by the probate court will the decision of the
trial court be overruled by the Supreme Court.

8. SAME—ACCOUNTS—BURDEN OF PROOF—ATTORNEY FEES.

The failure to periodically render statements in regard to time
and service by a testamentary trustee casts doubts on charges
and fees, the burden of proof being on the trustee for attorneys'
fees by way of showing valuable results even though they be
negative.

9. SAME—TRUSTEE'S FEES—ACCOUNTS—RECORD.

Allowance of $35,000 as trustee's fee for administration of trust
assets of upwards of a half million dollars for period of 7–1/2
years during which the trust was involved in much litigation
in State and Federal trial and appellate courts *held*, supported
by record, notwithstanding annual reports had not been filed
for the period.

10. SAME—ATTORNEY FEES—RECORD.

Attorney fees totalling $15,500 for testamentary trustee are ap-
proved, where record supports finding that such fees were
reasonable.

11. SAME—ATTORNEY FEES—ADDITIONAL TESTIMONY AS TO REASON-
ABLENESS.

Judgment as to attorney fees in the sum of $22,500 for testa-
mentary trustee is reserved for submission of proofs to circuit
court commissioner and forwarding to the clerk of the Supreme
Court for purposes of enabling Supreme Court to determine
reasonableness.

12. COSTS—CONSOLIDATED APPEALS—EVIDENCE—ATTORNEY FEES.

The question of costs on consolidated appeals of various orders
involving a large testamentary estate and trust is deferred until
final determination, where opportunity is afforded for supply-
ing testimony as to reasonableness of attorney fees.

Appeal from Saginaw; Huff (Eugene Snow), J.
Submitted June 5, 1958. (Docket Nos. 31–36, Calen-
dar Nos. 47,606–47,611.) Decided October 13, 1958.

Cynthia Mills Cleveland, a remainderman of the
testamentary trust established by the will of Arthur
D. Eddy, deceased, filed objections to the allowance
of annual accounts and the allowance of certain fees
and expenses in connection with its administration,
and instituted various proceedings for injunctive
relief and mandamus against Second National Bank
& Trust Company of Saginaw, Michigan, a Federal
banking corporation, and the probate judge of Sagi-
naw county to accomplish a complete review of the
administration and the invalidation of certain orders·
of the probate and circuit courts. From orders dis-
missing bills and petitions and from orders sustain-
ing probate court allowance of attorney fees and
extraordinary trustee's fees, plaintiff appeals. Mat-
ters consolidated on appeal. Affirmed, in part, and
referred for further testimony. See 356 Mich 120.

*William Alfred Lucking,* for plaintiff.

*John D. Currie, Gilbert A. Currie* and *Thomas G.
Long,* for defendants.

KELLY, J.   Arthur D. Eddy, a resident of Saginaw, died April, 1925, leaving a will and an estate valued at over $3,000,000.   The ninth paragraph of the will created a trust of 1/3 of the estate to continue during the lives of Laura S. Eddy and Lila Eddy Doebler, with remainder on the death of the survivor 1/2 to "my said niece, Cynthia Mills Cleveland, if surviving," or, if she were not surviving, to her issue. and the other 1/2 to a charitable trust under paragraph 10 of the will.

A bill of complaint was filed in the Saginaw circuit court on June 8, 1934, by the trustee (Second National Bank & Trust Company of Saginaw) seeking a construction of the will, and appellant, Cynthia Mills Cleveland, was named defendant as remainderman.   She removed the case to the Federal court and filed a cross bill charging that the trustee's negligence caused the trust estate to suffer large losses and, further, that the bank had used moneys belonging to the trust for the benefit of the bank.

On February 7, 1939, appellant's cross bill was dismissed and, in addition to taxable costs, the bank's litigation expenses were charged against appellant's interest in the trust.   From this dismissal and order, appellant appealed, with a companion case, to the United States court of appeals, 6th circuit, and the judgments were affirmed February 14, 1941 (*Van Auken* v. *Second National Bank & Trust Co. of Saginaw, Michigan,* 117 F2d 938, 1009); later certiorari was denied by the United States supreme court on June 2, 1941 (313 US 593, 594 [61 S Ct 1118, 1119, 85 L ed 1547]).

To understand this appeal the writer of this opinion deems it advisable to set forth a brief and condensed history of litigation that followed:

November 28, 1941: Appellant filed her petition in Saginaw probate court seeking delivery of her legacy and final accounting and for an order dis-

regarding the Federal court's judgment. The pro-
bate court denied her petition and appellant appealed
to the circuit court where the probate court's order
of dismissal was affirmed. Appellant appeals to this
Court and said appeal is now before us as 1 of 5
appeals that have been consolidated as 1 general
appeal.

January 15, 1942: Appellant filed her bill of com-
plaint in the Saginaw circuit court seeking a trial
*de novo* on all issues submitted to and determined by
the Federal court. The trustee bank sought and ob-
tained a writ of prohibition, which was granted by
this Court (*Second National Bank & Trust Company
of Saginaw* v. *Reid,* 304 Mich 376). Appellant's
petition for certiorari was denied by the United
States supreme court on October 11, 1943 (320 US
745 [64 S Ct 48, 88 L ed 443]).

August 24, 1945: The bank filed a bill in the Sagi-
naw circuit court for partition of the real estate as
between the tenth paragraph trust, testator's widow
and the beneficiaries of the ninth paragraph trust.
Cynthia Mills Cleveland appeared, contested the
proceeding and, after decree entered February 13,
1947, took an appeal to the Michigan Supreme Court.
She later took the portion partitioned to her and
dismissed the appeal. Her portion was of an ap-
proximate value of $180,000.

November 8, 1945: Order entered by the Saginaw
probate court, counsel for Cynthia Mills Cleveland
being present, for distribution of the assets of the
ninth paragraph trust except $100,000 par value of
United States obligations belonging to the trust "as
security for any sums which said testamentary
trustee shall be finally held to be entitled to charge
against or have reimbursement for out of the assets
of said trust." The order was expressed to be with-
out prejudice to the claims and contentions of Cyn-
thia Mills Cleveland therein referred to. The assets

so dealt with had a then value of $700,000 nearest round figure, including the 1/6 interest in the real estate partitioned as stated above. All of said assets, except said $100,000, have been taken by said Cynthia Mills Cleveland.

November 24, 1945: Saginaw probate court, after hearing, allowed the annual accounts of the bank as trustee and fixed the fee of trustee. This order was appealed and the circuit court's approval is now on appeal to this Court.

January 22, 1946: Appellant filed her bill of complaint in the Wayne circuit court, alleging that the Saginaw probate court was without jurisdiction to enter the orders of November 8th and November 24th, above referred to, and seeking a mandatory injunction requiring the bank to turn over the $100,-000 retained. The bank filed a petition for writ of prohibition against further proceedings in Wayne county, which was granted by this Court on April 6, 1948 (*Second National Bank & Trust Co.* v. *Wayne Circuit Judge,* 321 Mich 28).

May 26, 1948: Appellant filed a bill in the Saginaw circuit court asking that the probate court be prohibited from proceeding further in regard to paragraph 9 of the trust. This is now before us on appeal.

June 14, 1948: Appellant filed in the Saginaw circuit court a petition for mandamus seeking to compel the probate judge to vacate the orders of November 8th and November 24th, referred to above. This matter is now before us on appeal.

March 16, 1950: Appellant filed a bill in the Saginaw circuit court charging the officers and attorneys of the bank with fraud and wrongdoing in the administration of the ninth paragraph of the trust, and seeking to hold them personally liable. This suit is still pending in the circuit court.

August 21, 1950: Appellant filed petition in probate court to surcharge the bank as trustee. Petition

denied by both the probate court and the circuit court, and now on appeal to this Court.

May 21, 1956: Bill filed in Saginaw circuit court against trustee, involving the $100,000 fund granted to the bank as security. This case is still pending and is not on appeal here.

Five cases are on appeal here, as noted above. These cases were all pending in the Saginaw circuit court and were disposed of by the October 28, 1957, decree and subsequent orders. Claims of appeal were filed here on November 18, 1957.

*Appellant contends the Saginaw probate court did not have jurisdiction to approve the accountings and make allowances as contained in the order of November 24, 1945.*

Ten years after testator's death, the administration was closed by the probate court's order of May 10, 1935. Approximately 1 year previous (June 8, 1934) the bank sought a construction of the will in the circuit court and appellant removed the case to the Federal court on the grounds of diversity of citizenship and filed her cross bill, as referred to above. Through appellant's activities this Federal court action did not terminate until June 2, 1941, when the United States supreme court denied relief. Between June 2, 1941, and January 28, 1946, when appellant filed her bill of complaint in the Wayne circuit court, we have noted above the litigation caused by appellant filing petition in the probate court and bills of complaint in the Saginaw circuit court, or her appeals to the circuit court, Supreme Court, circuit court of appeals and the United States supreme court.

The Wayne circuit court action resulted in this Court granting a writ of prohibition, which definitely established the jurisdiction of the Saginaw probate court and that court's right to enter the November

24, 1945, order, as is established from the following, set forth in the judgment:*

"The probate court for the county of Saginaw at the time of the entry of its orders of November 8, 1945, and November 24, 1945, in the matter of the trust under the ninth paragraph of the will of Arthur D. Eddy, deceased, had sole and exclusive jurisdiction as against all other courts at law or in chancery of the State of Michigan to hear and determine all questions and matters remaining open between the parties to said trust in relation to the administration of said trust, the handling of the assets and funds thereof, the accounting by the trustee for its acts and doings, expenditures and disbursements made, the allowance of compensation to the trustee and the time and manner of distribution of the property of said trust and the closing thereof; and said probate court will continue to have such sole and exclusive jurisdiction until said trust shall be finally closed on the records of said probate court save only as appeal to the circuit court for the county of Saginaw (in manner and effect as provided by statute) has been heretofore taken from said order of November 24, 1945, or may be taken from any order hereafter made by said probate court in the premises."

In *Second National Bank & Trust Co.* v. *Wayne Circuit Judge,* 321 Mich 28, 41, 43, this Court stated:

"It appears that after the Federal court judgment of February 7, 1939, had been affirmed on appeal by the United States circuit court of appeals on February 14, 1941, and certiorari denied by the United States supreme court on June 2, 1941, Mrs. Cleveland on November 28, 1941, filed a petition in the Saginaw county probate court for an order requiring the bank as trustee to make immediate delivery of all trust assets then in possession of the bank due her. It also appears that under the Federal court

---

* 19 Supreme Court Journal, p 256.—Reporter.

judgment there was a provision for retention of the shares of stock of C. K. Eddy & Sons until such expenses and disbursements had been determined and paid. * * *

"The above order was an adjudication that the probate court of Saginaw county could not order something done contrary to the unperformed provisions of the Federal court judgment. It was not an adjudication that the probate court could not hear other accounts of the bank as trustee."

We see no merit in appellant's contention that the probate court did not have jurisdiction to issue the order of November 24, 1945.

*Did the probate court and circuit court err in refusing to agree with appellant that the trustee bank had negligently administered the trust and used trust funds for the trustee bank's benefit?*

Appellant made a similar claim in the Federal matter which was tried before Federal Judge Tuttle, and in the brief submitted in this appeal, charges the trustee with "making and carrying out its excessively dangerous scheme (in the first Federal testamentary trustee's equity accounting action, before Hon. Arthur J. Tuttle) of hiding and covering up its many serious speculative losses in the Eddy trusts." In her brief, appellant further charges: "The lower Federal court covered this up by a Federal judgment on February 7, 1939, * * * which judgment protected trustee bank from liability for speculative losses of about $800,000 as shown by the Wooden and Benson audit of 1936. Those were the real reasons for this trustee bank continuing C. K. Eddy & Sons in existence from 1939 to 1945— until prices and values of assets of C. K. Eddy & Sons had partially recovered, so as to show, by the then badly depreciated value of the American dollar —much smaller losses."

When Judge Tuttle refused appellant's claim of wrongdoing and culpable negligence, an appeal was taken to the circuit court of appeals, where Judge Tuttle's decision was approved. Not content with the Federal court's finding, appellant sought a determination in Michigan courts by filing her 93-page bill of complaint (January 15, 1942) seeking an overthrow of the Federal order of February, 1939.

This Court commented on this charge of fraud and wrongdoing in our decision in *Second National Bank & Trust Company of Saginaw* v. *Reid*, 304 Mich 376, 393, 395, as follows:

"A reading of the amended bill of complaint, the interlocutory order, the findings of the district judge, the judgments, shows that the charge of fraud in this respect is utterly unfounded. * * *

"The record itself before us negates such fraud, or any other fraud."

The trustee bank has been in the trust business since 1915 and has handled and administered over 1,000 trusts. This bank has never been charged with fraud or mismanagement of any trust estate until the claim was first made by appellant in this case. Appellant failed to sustain her charges that trustee bank was guilty of fraudulent and negligent conduct in administering the trust.

*Did the lower court err in not finding that the probate order (November 24, 1945) was void because trustee bank failed to comply with PA 1939, No 288, ch 4, § 33 (Stat Ann 1943 Rev § 27.3178 [284])?*

The statute requirement referred to provided that the order "recite in detail the extraordinary services for which such allowance is made, giving the amount allowed for each item thereof, or the reasons for considering the case one of unusual difficulty or responsibility; and in case the order does not contain such

recitals as herein required, the same shall be void and of no effect."

The order of November 24, 1945, recites that "a fair and reasonable charge for the services rendered by the said trustee in the care and management of said estate from May 10, 1938, to the present time, and including the litigation in the Federal courts and in the Michigan courts, is $35,000."

In taking her appeal to the circuit court, appellant did not raise a question of sufficiency of recitals in the order, and when the matter was before the circuit court PA 1947, No 50, had amended the prior act by removing the provision voiding an order which did not contain the required recitals.* In *In re Donovan's Estate*, 266 Mich 362 (91 ALR 1418), we held that changes in procedure apply to existing proceedings.

Appellant's 10-page appeal did not question the sufficiency of the recital and was not before the circuit court.

In *In re Charles' Estate*, 250 Mich 5, 8, this Court said:

"The failure of contestant to object to the character or form of the petition and order, at the hearing in probate court and in her claim of appeal, worked a waiver of the deficiencies in them."

In *In re LaFreniere's Estate*, 316 Mich 285, 290, we held:

"On the appeal the scope of the inquiry was limited to the matters raised by the notice of appeal and reasons assigned in support thereof. *In re Murray's Estate*, 219 Mich 70. It was, in consequence, not a hearing *de novo*."

The court did not err in refusing to find the probate order void.

---

* See, currently, CL 1948, § 704.33 (Stat Ann 1957 Cum Supp § 27.3178[284]).—Reporter.

*Did the court err in refusing appellant's counsel's request for $46,000 for legal services?*

This $46,000 claim can be split into the $28,000 item for 1934 services; the 1938 claim for $10,000, and the 1942 claim for $8,000.

The $28,000 claim is based on the fact that when the matter was before the Federal court, appellant's counsel, Mr. Lucking, called to the attention of the trustee's attorney that if $540,000 of income were distributed in one taxable year ($180,000 to testator's widow, $180,000 to testator's sister, and $180,000 to the charitable trust), such distribution would result in a Federal income tax against the testator's widow and sister of over $80,000 each, and because "appellant's counsel Lucking objected strenuously to the Federal court and defendant trustee" the plan to distribute the $540,000 was abandoned.

R. Perry Shorts, president of trustee bank, testified:

"They found $540,000 of income was undistributed surplus—undistributed earnings. * * *

"Mr. Lucking warned them that if they would declare that dividend in one taxable year, to Mrs. Doebler and Mrs. Morgan, it would cost them nearly $100,000 in taxes. * * * And upon Lucking telling them that, the entire project fell to the ground."

We quote from Mr. Lucking's brief in regard to the 1938 claim of $10,000 earned fees:

"Lucking's claim of an added $10,000—

"The 1938 scheme—This is similar to * * * (Lucking's claim of $28,000) with a little different set of facts, namely, that in 1938, the bank proposed to distribute an accumulation of income of $477,000 in one year which would have given Doebler (a sister) $160,000, and Mrs. Morgan (widow) $160,000—on which they would have had to pay an income tax of approximately $70,000 each in the year of distribution.

"This ill-advised plan was stopped by Lucking, who thus saved 2 of the legatees $70,000 each—Mrs. Morgan afterwards got the $70,000 from the distribution of corpus, and Mrs. Doebler's daughter (Cleveland) received 1/2 of the distribution of the proposed corpus, and the other half went to the charitable trust.

"In each case the services were valued by Mr. Sprague at 7% of $70,000 or $5,000 or a total of $10,000."

Frederic B. Besimer, Detroit attorney, who was present at the Federal court hearing as attorney for trustee under deed of trust from Lila Eddy Doebler, testified in regard to Lucking's suggestions, as follows:

"Without being able to specify the particularity as to time and place, I have a definite recollection of a discussion between counsel—by counsel I mean yourself (Mr. Lucking), Mr. O'Keefe, myself and I believe Frank Rockwith—when you insisted that this was poor judgment because of the adverse tax effect any such distribution—lump sum distribution— would have. Now I think that that took place in the halls of the district court at Bay City, not only at the time that this particular testimony was introduced but you insisted on that from time to time during the proceedings."

Lucking's claim for $8,000 in fees is based on services rendered in filing his chancery bill (January 15, 1942) to determine the validity of the Federal judgment of February 7, 1939.

The bank amended its June 8, 1934, bill which asked for a construction of the will and a distribution of surplus and income, and in its amendment omitted its prayer in regard to distribution. The record sustains Mr. Lucking that he recommended such a change. Appellant, however, did not file any pleadings concerning this matter before it was withdrawn

and it never was at issue in the case or subject to any hearing. Plaintiff's counsel did not make this claim in the court where, it is claimed, the services were rendered.

The court did not err in denying appellant's counsel's request for attorney fees.

*Did the court err in allowing $70,000 fees (trustee $35,000—trustee's attorney $35,000)?*

At the outset of the discussion on this question we believe the following legal principles, which we will apply, should be set forth:

In *In re McNamara's Estate,* 166 Mich 451, this Court dealt with the reasonableness of fees for extraordinary services of administrator and attorneys' fees for legal services, and said (pp 453, 456):

"It is said in the brief that the amount of compensation  \*  \*  \*  to be paid to certain attorneys for legal services depended upon the reasonableness of the charges, and that whether they were or were not reasonable was a question of fact for a jury. Under repeated decisions of this Court, some of which are referred to in this opinion, it was for the court, and not for a jury, to determine whether the disbursements referred to in the brief should be allowed. \*  \*  \*

"If there are circumstances disclosed which call for the exercise, first by the probate court, and upon appeal by the circuit court, of the discretion which with respect to the allowance of fees to administrators and others is reposed in those courts, nothing but a manifest abuse of such discretion will be reviewed by this Court."

And in *In re Baldwin's Estate,* 311 Mich 288, 311, we said:

"In the allowance of items of this character as a charge in favor of or against an executor a measure of discretion is vested in the trial court; and it is only when there appears to have been a manifest

abuse of such discretion that the decision of the trial court will be overruled."

See, also, *In re Tolfree Estate,* 347 Mich 272 (65 ALR2d 1008).

The failure to periodically render statements in regard to time and service casts doubts on charges and fees; the burden of proof is on the bank claimant for attorneys' fees; there must be valuable results accomplished and negative results have an important bearing. *Rippey* v. *Wilson,* 280 Mich 233; *Hightower* v. *Detroit Edison Co.,* 262 Mich 1 (86 ALR 509); *Behr* v. *Baker,* 255 Mich 607; *Crary* v. *Goldsmith,* 322 Mich 418.

Appellant contends the $70,000 fee item is a " 'punishment' of Cleveland for asking that the said Federal court's jurisdiction in equity to enter the final testamentary accounting Federal equity judgment of February 7, 1939, be determined by this Supreme Court—which this Supreme Court did by its opinion in 304 Michigan 376."

Each year previous to July, 1941, the yearly account filed by the trustee had, after hearing, been allowed by the probate court. Appellant filed objections to the account for the period from July 1, 1941, to April 30, 1942, and no hearing was held on that account or any account thereafter before the hearing resulted in the November 24, 1945, order.

From Lila Eddy Doebler's death (May, 1938) the trustee did not file an account asking for trustee's fees, either ordinary or extraordinary, until the account of March 2, 1945, which requested the fee, which was granted, and which is now before us on this appeal.

The petition, in addition to reciting the ordinary duties of the trustee, set forth the trustee's activities in the Federal court litigation, the prohibition proceedings, and the prohibition against which the latter were directed.

The Federal court judgment (November 30, 1943) provided:

"The items set forth in the statement submitted to this court by the trustee for expenses in the State courts of Michigan, including the proceedings for writ of certiorari to the United States supreme court from the Supreme Court of Michigan, were not incurred in the course of or in connection with the litigation in this cause, and are deemed not to be within the purview of said paragraph 8 or the jurisdiction of this court, and accordingly are not adjudicated by this order, but are left open, to be by the trustee submitted to the probate court for the county of Saginaw, under which the administration of said trust has been had, in and as a part of the final account of the trustee to said probate court on the closing of said trust, the allowance of the trustee's fees, and making distribution of the property thereof."

The bank's president and its trust officer were examined and cross-examined at length.

George E. Parker, Jr., vice-president and trust officer in charge of the trust department of the National Bank of Detroit, said that he "examined the trustee's accounts and the petitions that accompanied the accounts, the petition for fees; I read the opinions of the appellate courts in each of the matters that has been in litigation in the years in question," and that he had "a very good understanding" of the nature of services required by the trustee.  He testified:

"The services I am talking about involved the responsibilities and the duties of the trustee in following the management of the assets of C. K. Eddy & Sons, the stock of which they held in this trust, as well as the duties and responsibilities of the trustee in defending the trust estate in the several suits that were brought by the beneficiary of the trust.

"*Q*. There was a substantial hazard to the trustee all the way through the litigation, was there not?

"*A*. In my opinion there was.

"*Q*. Well, based upon what you have read, and the record here of the accounts, petitions for trustee's fees, and the testimony of Mr. Tessin that you heard, and the statement that he read, and the opinions of the court indicated at the end of the litigation, what would you say as to the reasonableness of the fee which the trustee asks of $35,000?

"*A*. I think it's extremely reasonable."

Mr. Tessin, the trustee bank's vice-president and trust officer, testified:

"In addition to having charge of the assets that were worth probably in excess of $500—or $600,000 from the date of Mrs. Doebler's death in May, 1938, to the time that the hearing was had in November, 1945, the trustee was almost constantly engaged in litigation largely brought about by Mr. Lucking as attorney for Cynthia Mills Cleveland, the remainder-man of that trust. It was the duty of the trustee to defend itself and defend the trust estate and to look after the property, answer the questions, engage attorneys, consult with them at various times, appear in court, go over its records extending over many years past; and it was as a result of that background and history, probably somewhat covered in the testimony or the answer that I gave * * * in reciting the litigation that I said 'that in my opinion a fee of $35,000 covering the 7-1/2 years of litigation and other work would not be out of line, and I think would be reasonable.' "

Appellant offered no proof to refute the testimony of either Tessin or Parker. Counsel for appellant testified as to what he thought would be reasonable attorneys' fees, but did not offer any such testimony in regard to trustee's fees. His position seems to be that the trustee bank could have liquidated C. K. Eddy & Sons at any time after 1939 and its failure to do so is a bar to receiving trustee fees for the period covered in this appeal. The record does not

sustain his contention. The record does sustain the court's award of $35,000 trustee's fees.

Trustee bank paid the attorneys' fees without submitting the claims therefor to the probate court or giving to the plaintiff the opportunity to object.

The firm of Butzel, Eaman, Long, Gust & Bills, of Detroit, on October 19, 1943, submitted to the bank a bill for $12,500 for "services in prohibition proceedings brought in Michigan Supreme Court to perpetually stay further proceedings in Saginaw circuit court in chancery, in suit begun by Cynthia Mills Cleveland and pending before Judge Neil E. Reid, and to vacate orders heretofore made by Judge Reid therein, including services in United States supreme court opposing application for certiorari made by Cynthia Mills Cleveland." On October 22, 1943, the bank issued its check for this amount, plus $37.14 for additional costs incurred by said firm.

Attorney Jerome Weadock, of the Saginaw firm of Weadock & Weadock, testified that the firm of Butzel, Eaman, Long, Gust & Bills "have a national, reputation as being leaders of the American Bar;", that he had thoroughly acquainted himself with the briefs and records in the prohibition case and in his opinion the $12,500 fee was reasonable.

James K. Watkins, a practicing attorney of Detroit, questioned by Mr. Long, testified as follows:

"*Q.* And did you examine the briefs in the Michigan Supreme Court in the prohibition?

"*A.* I did.

"*Q.* And in the United States supreme court in the certiorari case?

"*A.* I did, yes sir.

"*Q.* How long have you known me?

"*A.* Oh, I should think 30 years.

"*Q.* We have both been practicing in Detroit for that length of time?

"*A.* That is correct.

"*Q.* Now, based on the investigation you have just told us about and having in mind that the bill that our firm rendered for services in the prohibition case was $12,500, do you have an opinion as to the reasonableness of that bill?

"*A.* I have.

"*Q.* And will you state what your opinion is?

"*A.* I think that considering the amounts involved, the importance of the litigation, your long standing as a member of the bar and the results achieved, the bill was fair and reasonable."

Attorneys Weadock and Watkins were the only attorneys not associated with the litigation who testified in regard to the reasonableness of this fee. Attorney Lawrence M. Sprague, who plaintiff's attorney Lucking describes as one who "sat through as Cleveland's associate counsel—entire Federal court hearings and 304 Michigan 376, prohibition and circuit court motion to dismiss proceedings," testified that in his opinion a reasonable fee for this firm would be $8,500.

The record justifies the trial court's conclusion that $12,500 was a reasonable fee to pay Butzel, Eaman, Long, Gust & Bills, and said finding is approved by this Court.

Attorney Hugo E. Braun's statement for fees in the amount of $3,000 was dated June 7, 1945, and approved by the trustee bank's board of directors and its trust committee on June 19, 1945. The record discloses that the fee was reasonable and we find that the court was justified in allowing same.

We reserve judgment as to whether fees in the amount of $22,500 allowed attorneys O'Keefe and Rockwith were reasonable, and we refer this question to the circuit court with instructions that a circuit court commissioner be designated for the sole purpose of taking any further proof that either appellant or appellees desires to introduce in regard

to the reasonableness of the legal fees paid to attorneys O'Keefe and Rockwith. Ten copies of such testimony shall be forwarded by said circuit court commissioner to the clerk of this Court.*

The findings of the lower court in the respective cases on appeal here are approved and affirmed, with the exception of the allowance of the legal fees paid to attorneys O'Keefe and Rockwith.

The question of costs will be decided upon final determination of this appeal.

DETHMERS, C. J., and CARR, SMITH, BLACK, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred.

* See 356 Mich 120.—REPORTER.