## *In re* GERBER TRUST

## *In re* McCARTY TRUST

Docket Nos. 55787, 55788. Submitted March 5, 1982, at Grand Rapids.
——Decided June 8, 1982.

Sue Ellen Baker James is one of several remaindermen beneficiaries under two testamentary trusts, the "Helen Gerber" trust and the "Cornelius McCarty" trust. The two trusts consist largely of stock in the Gerber Products Company. The two trusts have been administered by the Old State Bank of Fremont since their inception. In 1968, the bank was named sole successor trustee. Twice the bank, as trustee, sold Gerber stock to Gerber directly and not on the open market, thus avoiding payment of substantial broker's commissions on the sale. Only one of the beneficiaries of either trust was notified before either of the stock transactions; all of the beneficiaries were subsequently informed of the transactions through the annual accounts of the trustee filed in probate court. From the inception of the trusts, the bank's board of directors and trust committee has included a number of Gerber employees. Gerber also maintained a large number of accounts at the bank. During the years from 1965 to 1975, Gerber actively pursued a program of purchasing its own common stock. In 1979, James brought an action in federal court against the bank, Gerber, and officials of both companies in connection with the stock transactions. James alleged violations of the Federal Securities and Exchange Act, SEC Rule 10b-5, and Michigan's fiduciary laws. The federal action was decided in favor of the defendants. Subsequently, James filed petitions in the Newaygo Probate Court seeking to remove the bank as trustee of the trusts. The bank

REFERENCES FOR POINTS IN HEADNOTES

[1] 76 Am Jur 2d, Trusts §§ 378, 432, 441.
[2] 46 Am Jur 2d, Judgments §§ 397, 417.
[3, 4] 76 Am Jur 2d, Trusts § 131.
  Hostility between trustee and beneficiary as ground for removal. 63 ALR2d 523.
[5] 76 Am Jur 2d, Trusts §§ 532, 653
[6] 76 Am Jur 2d, Trusts §§ 359, 539.
[7] 76 Am Jur 2d, Trusts § 653.

responded with motions in opposition to its removal and with its own petitions for an allowance of attorney fees incurred in defending itself against James's action in federal court. The court, Thomas J. Eggleston, J., denied James's petitions to remove the bank as trustee and granted the bank's petitions for attorney fees. James appeals, alleging that the probate court erred in denying her petitions to remove the bank as trustee and in granting the bank's petitions for allowance of attorney fees. The Court of Appeals consolidated the cases on appeal. *Held:*

1. The issue of the bank's removal as trustee had previously been fully litigated and adjudicated adversely to James in the federal court. James is collaterally estopped from raising it again by bringing a petition to remove the trustee in probate court.

2. The probate court did not err in granting the bank's petitions for allowance of attorney fees. A trustee's attorney fees in defense of his administration of the trust are allowable as charges against the trust where a charge of fraud on the part of the trustee proved to be unfounded and the trustee is exonerated of any wrongdoing.

Affirmed.

1. TRUST — TRUSTEES.

Generally, a trustee has a duty to engage in a thorough investigation before making any investment or selling any securities which are part of the trust for which he is responsible.

2. ESTOPPEL — COLLATERAL ESTOPPEL.

Collateral estoppel bars the relitigation of issues previously decided in the first action when the parties to a second action are the same even if the first action was in a federal court and the second action in a state court; where the second action is a different cause of action, the bar is conclusive only as to issues actually litigated in the first action.

3. TRUSTS — REMOVAL OF TRUSTEE.

Mere hostility between a trustee and a beneficiary does not justify the removal of the trustee where nothing in the trust agreement requires the trustee to interact personally with the beneficiaries on a continuing basis.

4. TRUSTS — REMOVAL OF TRUSTEE.

Something more than a mere legal controversy between a trustee and a beneficiary is necessary to justify removal of the trustee.

5. TRUSTS — TRUSTEES.

A trustee of a trust may defend legal actions, claims or proceedings for the protection of the trustee in the performance of his duties, and a trustee may employ attorneys to assist him in the performance of his administrative duties (MCL 700.826[e], 700.826[f]; MSA 27.5826[e], 27.5826[f]).

6. TRUSTS — EXPENSES OF FIDUCIARY.

A fiduciary should be allowed the amount of his or her reasonable expenses incurred in the administration of the estate for which the fiduciary is responsible and the fiduciary should be compensated for his or her services, both ordinary and extraordinary, as the court in which the fiduciary accounts are settled deems to be just and reasonable (MCL 700.541; MSA 27.5541).

7. TRUSTS — ATTORNEY FEES.

The attorney fees for a trustee's defense of his administration of the trust for which he is responsible are properly allowable as charges against the trust.

*Dykema, Gossett, Spencer, Goodnow & Trigg,* for plaintiff.

*Baxter & Hammond,* for Old State Bank of Fremont.

Before: D. F. WALSH, P.J., and CYNAR and W. F. HOOD,* JJ.

CYNAR, J. Appellant beneficiary appeals as of right the probate court's order denying her petitions to remove the trustee and granting the trustee's petitions for allowance of attorney fees incurred in defending itself against an unsuccessful action brought by appellant in federal court.

Appellant is one of several remaindermen beneficiaries under two testamentary trusts, the Helen Gerber trust (Gerber trust) and the Cornelius McCarty trust (McCarty trust). The two trusts consist

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

largely of stock in the Gerber Products Company (Gerber).

Since their inception during 1959 and 1956, respectively, the two trusts have been administered by appellee Old State Bank of Fremont (bank). The bank was named as sole successor trustee in 1968.

The bank's first annual account as sole trustee (1968) revealed that in April of that year, the bank sold 5,000 shares of Gerber stock at the then-current market price of $29 per share, for a total price of $145,000, and a total gain to the McCarty trust of $110,000. The shares were not sold on the open market but were instead sold directly to Gerber, with the result that the trust was able to avoid payment of substantial broker's commissions on the sale. The eighth annual account of the Gerber trust (1966) showed that in August of that year, the bank had sold 10,000 shares of Gerber stock at the then-current market price of $24.75 per share, for a gain of about $137,500 to the Gerber trust. Again, as in the McCarty trust transaction, the stock was sold directly to Gerber, and the trust did not have to pay any broker's fees.

Although none of the beneficiaries of either trust (with the exception of appellant's mother, who was an income beneficiary of the McCarty trust) were notified before either the 1966 or the 1968 transaction that the buyer of their trust's stock was Gerber, all of the beneficiaries were informed of the stock transactions in question through the bank's annual accounts for the years 1966 and 1968 filed with the probate court at the end of each of those years. Neither appellant, who retained an attorney and appeared in probate court, nor any other beneficiary filed an objection to the probate court's allowance of the bank's

annual accounts for the years 1966 and 1968. Both the 1966 and 1968 transactions, having been duly reported in the bank's annual accounts, were approved by the probate court.

From the inception of the trusts, the bank's board of directors and trust committee (which executed the bank's functions as trustee, with routine approval from the board of directors) included a number of Gerber employees. From late 1965 through 1968, the bank's trust committee consisted of five members, one of whom was the bank's president, Herman Schuiteman, two of whom were local attorneys and two of whom were officers of Gerber. The bank's board of directors consisted of 14 members, 4 of whom were Gerber officials, including William McKinley, a director and vice-president for Gerber, also its general counsel, and Charles Gerber, assistant treasurer for Gerber. Both Charles Gerber and William McKinley abstained from voting on the resolutions approving the 1966 and 1968 sales of Gerber stock by the trust.

Gerber also maintained a large number of accounts at the bank. The total amount on deposit was over one million dollars, with an annual cash flow of several million dollars.

During the years from 1965 to 1975, Gerber actively pursued a program of purchasing its own common stock.

In 1970, appellant brought an action in federal court against the bank, Gerber, and officials of both companies in connection with the 1966 and 1968 stock transactions. Her claim was based upon both federal and state law. The federally based part of her claim alleged violation of the Securities and Exchange Act of 1934, § 10(b), 15 USC 78j(b) and SEC Rule 10b-5. The state-law based portion

of her claim alleged a violation of Michigan's fiduciary laws, MCL 704.37; MSA 27.3178(288).

In the first portion of her claim, appellant (there plaintiff) alleged that the defendants (the bank, Gerber, and officials of both companies) had violated SEC Rule 10b-5 by failing to inform the beneficiaries of the trust of various material facts, including (1) the identity of the buyer (Gerber) and (2) high Gerber earnings for the periods immediately preceding each stock sale. Appellant's federal cause of action was initially dismissed on the theory that a trust beneficiary lacks standing to sue under federal securities laws. This decision was reversed by the Sixth Circuit Court of Appeals in *James v Gerber Products,* 483 F2d 944 (CA 6, 1973). Appellant was found to have standing, and the matter was remanded to the federal district court for a trial on the merits.

At that trial, appellant's attorney was allowed wide latitude in examining numerous witnesses over the repeated objections of defendant's counsel. Appellant was permitted to raise a number of issues, including "fraud, conflict (of interest), negligence, mistake, mental and/or moral aberration, loyalty, concern, interest, personal profit and influence". The jury found for defendants therein on both the state and federally based claims. Appellant brought motions for judgment notwithstanding the verdict or, in the alternative, for a new trial.

In May, 1976, the federal district court denied both of appellant's motions in a comprehensive opinion.

In denying appellant's motions, the trial judge noted (1) that only a minority of members of the bank's trust committee and board of directors were

Gerber employees and that the Gerber employees had abstained from voting on all resolutions in which Gerber had an interest, (2) that the stock in question was sold at the market price on each occasion, (3) that Gerber's published earnings, as well as the national birth rate, had declined in each of the years preceding the stock sales in question and that, as a result, the trust committee's investment consultants had recommended that the bank sell Gerber shares on behalf of the trust, and (4) that there was no showing that either Gerber or any of the individual defendants had profited from the two transactions in question (the total number of shares purchased was less than one percent of all of Gerber's stock).

The court also rejected appellant's pendent state claim that the bank had violated various fiduciary duties to plaintiff. The court noted that appellant had alleged "constructive fraud", but found distinguishable each of the cases cited by appellant in support of the proposition that the transactions in question had amounted to a "constructive fraud".

The federal district trial judge stated that even if the stock transactions in question had been improper under Michigan law, appellant's remedy should have been to attack the probate court's allowance of the bank's accounts for the years in which those transactions took place. The judge held that appellant could not collaterally attack the probate court's orders allowing the accounts and that those orders were res judicata as to all allegations of impropriety in connection with the transactions, except for allegations of fraud, which, as noted above, appellant had failed to prove.

The federal district court opinion and order upholding the verdict in favor of the defendants

therein was affirmed on appeal, *James v Gerber Products,* 587 F2d 324 (CA 6, 1978).

In early 1979, appellant filed petitions with the Newaygo County Probate Court seeking to remove the bank as trustee under the statute authorizing the removal of fiduciaries, MCL 704.48; MSA 27.3178(299), now MCL 700.574; MSA 27.5574. Appellant contended that removal was necessary because, as a result of continuing potential conflicts of interest, the bank was "unsuitable or incapable to discharge the trust" within the meaning of the above-cited statute.

The bank responded with motions in opposition to its removal and with its own petitions for an allowance of attorney fees incurred in defending itself against appellant's action in federal court. On June 25, 1980, the probate court denied appellant's petitions to remove the bank as trustee and granted the bank's petitions for attorney fees.

In considering the removal issue, the probate court stated that "the issues raised by [appellant] alleging conflicts of interest, constructive fraud and violations of state fiduciary laws were resolved by the federal suit in favor of the bank * * *".

The probate court also rejected appellant's alternative contention that mere hostility between a beneficiary and a trustee constitutes good cause for removal of the trustee. The probate court noted that appellant had failed to show that any hostility between appellant and the bank was likely to interfere materially with the proper administration of the trusts.

In allowing the bank's cross-petitions for attorney fees, the probate court made the following observations:

"It is also the opinion of the court that the petition

for allowance of fees and expenses incurred in the federal litigation should be allowed in the amount of $49,000.93. Michigan law allows the reimbursement of attorney fees and expenses from the trust fund where the trustee has successfully defended its own conduct against claims of security law violations and fiduciary fraud. MCL 700.543 [MSA 27.5543], MCL 700.541 [MSA 27.5541], MCL 700.826 [MSA 27.5826], MCL 700.809 [MSA 27.5809]; *In re Eddy Estate,* 354 Mich 334 [92 NW2d 458] (1958); *In re Baldwin's Estate,* 311 Mich 288, 314 [18 NW2d 827] (1945); *Detroit Trust Co v Blakely,* 359 Mich 621, 630 [103 NW2d 413] (1960); *In re Grover's Estate,* 233 Mich 467, 473 [206 NW 988] (1926); *Mann v Day,* 199 Mich 88, 97 [165 NW 643] (1917); 31 Am Jur 2d, Executors and Administrators, § 534, p 237.

"Ms. James argues that attorney fees and expenses may not be awarded in the absence of express authorization by statute or court rule. She relies upon *State Farm Ins Co v Allen,* 50 Mich App 71 [212 NW2d 821] (1973) and Judge Kelly's dissent in *City Bank & Trust Co v Kwaske Bros Construction Co,* 78 Mich App 158 [259 NW2d 407] (1977), as endorsed by the Michigan Supreme Court in 402 Mich 844 (1978). However, those cases appear to be inapposite. There exists established precedent as cited above for the allowance of the fees and expenses from the trust assets. It is the court's opinion that the cases cited by Ms. James do not constitute authority rejecting that precedent."

The probate court on October 27, 1980, denied appellant's motions for reconsideration. On November 25, 1981, this Court determined that the probate court's orders denying removal of the trustee and granting the petitions allowing attorney fees were final orders and appealable as of right under MCL 600.861; MSA 27A.861.

Appellant argues that the probate court erred reversibly in denying her petitions to remove the bank as trustee. We do not agree.

Appellant relies on the general principle that a trustee has a duty to engage in a thorough investi-

gation before making any investment or selling any securities which are part of the trusts therein, *In re Buhl's Estate*, 211 Mich 124; 178 NW 651; 12 ALR 569 (1920), Pomeroy, Equity Jurisprudence (5th ed), §§ 1070, 1072a. Appellant then points to certain testimony taken in the federal court proceedings suggesting that, because certain members of the bank's board of directors and trust committees are Gerber employees, they would not be free to reveal to the trust committee certain confidential Gerber information. Appellant also notes that the trusts herein consist largely of stock in the Gerber company. Appellant reasons that under these circumstances, there is a conflict of interest between the bank's responsibility as trustee to investigate Gerber stock and the interest of Gerber employees in not disclosing certain information concerning the company. In our view, appellant's position is highly questionable because such confidential information would not be available to any non-Gerber employee and the trusts could conceivably reap positive benefits from close contact with Gerber (subject, of course, to federal security law restrictions on the use of inside information in stock transactions). At any rate, appellant contends that, as a result, the bank is forced into a continuing course of nonfeasance in investigating the company whose stock comprises the majority of the assets of these trusts. Appellant concludes that, given this nonfeasance, the bank's collection of trustee fees constitutes "the garnering of unmerited benefits", a constructive fraud under Michigan law. Appellant urges that, in order to alleviate the continuing conflict of interest and constructive fraud, the probate court should have entered orders removing the bank as trustee.

Appellant's arguments as to this issue are based entirely on the contention that the bank is in a

conflict-of-interest position because of the presence of directors and officers common to the bank and Gerber. The following illustrates the charge plaintiff made as well as the adjudication in the federal courts:

"Plaintiff [appellant here] charges that defendant Bank breached its fiduciary duty as the trustee of the Gerber and McCarty Trusts when it authorized sales of stock to the Gerber Products Company. In essence, plaintiff reasons that the existence of officers and directors common to the Bank and Gerber at the time of the sales amounted to a constructive fraud in violation of both the state fiduciary laws and 15 USC § 78j(b). We agree with the district judge that the final judgments of the Michigan probate court bar plaintiff's action on this claim.

\* \* \*

"A review of the Michigan Probate Code reveals that the probate court hearings conducted in 1966 and 1968 afforded plaintiff a 'full and fair opportunity' for resolution of her claim of fiduciary fraud. At the time the trustee accountings were filed, the Michigan probate court was vested with the jurisdiction to consider any alleged violations of state or federal laws committed by defendant Bank in the course of the Gerber stock sales. If a party in interest has a complaint with a trustee accounting, the party should object to the allowance of the accounting during the probate hearing. MCL 704.39. The hearing is designed to adjudicate all claims relating to the complete range of trustee misconduct, and the allowance is intended to settle all rights of the parties in interest against the trustee." *James v Gerber Products,* 587 F2d 324, 327, 328 (CA 6, 1978).

In petitioning the probate court for the removal of the bank as trustee, appellant has not pointed to any new acts of misconduct on the part of the bank. Instead, appellant's petitions rely entirely on the alleged impropriety of the presence of

officers and directors common to the bank and Gerber, a situation which already existed at the time of the 1966 and 1968 stock transactions. If this issue was already res judicata at the time of the federal litigation, then it was certainly res judicata several years later when the probate court in the present case denied appellant's petition to remove the trustee. The probate court properly rejected as res judicata appellant's "conflict of interest" argument as a basis for removing the trustee.

Similarly, the probate court also properly rejected as res judicata appellant's charge that the bank's continued status as trustee amounted to a "constructive fraud" upon the trusts. The federal district court fully considered the issue of constructive fraud before denying appellant's motions for judgment notwithstanding the verdict and for new trial. The federal district court's findings of fact and conclusions of law fully disposed of appellant's charge of constructive fraud. There is no merit to appellant's argument that her present charge of constructive fraud differs from that raised in the federal courts. On both occasions, appellant has relied entirely on the argument that the existence of officers and directors common to the bank and Gerber creates a conflict-of-interest situation which impairs the bank's ability to carry out its responsibilities as trustee. The basis for appellant's objection to the bank's continued status as trustee is identical to the basis for her federal court action objection to the 1966 and 1968 stock transactions. The probate court properly found the issue to have been fully litigated and, therefore, a proper subject for the application of the doctrine of res judicata.

It should be noted that appellant did request the

bank's removal in the federal proceedings and the request was denied. As part of her prayer for relief in federal district court, she specifically asked "that [the bank] be removed as trustee and a new trustee having no relationship with [the bank] or with Gerber Products Company be substituted". The federal courts, in entering judgments against appellant, specifically denied her all of the relief she requested, including removal of the bank as trustee.

The issue of the bank's removal has already been fully litigated and adjudicated adversely to appellant.

Because this issue has been decided by the federal courts, appellant is collaterally estopped from raising it again by bringing subsequent petitions to remove the trustee in probate court. See *Braxton v Litchalk,* 55 Mich App 708; 223 NW2d 316 (1974), *Gomber v Dutch Maid Dairy Farms, Inc,* 42 Mich App 505; 202 NW2d 566 (1972). Collateral estoppel applies to bar relitigation of the issue even if, as appellant contends, the present action is technically a different cause of action from the one she brought in federal court. Issue preclusion is particularly appropriate in this case because, as noted herein, the grounds for appellant's present petitions to remove the bank as trustee (constructive fraud and conflict of interest) are identical to those raised and rejected in the federal proceedings.

Appellant further argues that the probate court should have removed the bank as trustee because of the allegedly hostile relationship between the bank and beneficiaries such as appellant. Appellant cites several cases for support of the proposition that hostility between a trustee and beneficiary constitutes good cause for removal of the trustee, but those cases are distinguishable.

In *Keating v Keating,* 182 Iowa 1056; 165 NW 74 (1917), intense personal animosity developed between the testator's two sons, and the son named as trustee completely refused to carry out his duty of making a reasonable judgment as to the time when the beneficiary should become entitled to the proceeds. No comparable circumstances exist in the present case. The probate court noted that appellant has not shown that the bank has allowed personal animosities to interfere materially with its administration of the trusts. Similarly, the other cases relied on by plaintiff involve actual breach of the trustee's duty in administering a trust and are distinguishable on that basis.

Further, *McPherson v Cox,* 96 US 404; 24 L Ed 746 (1878), provides little support for appellant's argument that the bank in the present case should be removed as trustee. The Court in *McPherson* observed that hostility does not justify the removal of a trustee who seldom has occasion to interact personally with the beneficiary. In the present case, as in *McPherson,* nothing in the trust agreements in question requires the trustee (bank) to interact personally with the beneficiaries (such as appellant) on a continuing basis.

While the parties have engaged in extended litigation over the 1966 and 1968 stock transactions, this alone is not sufficient evidence of hostility to warrant the removal of the bank as trustee. Something more than a mere legal controversy between a trustee and beneficiary is necessary in order to justify the removal of the trustee. The probate court properly denied appellant's petitions to remove the trustee.

Appellant also argues that the probate court erred in granting the bank's petitions for allowance of attorney fees incurred in the federal litigation.

Appellant apparently attempts to characterize the allowance of attorney fees as being in the nature of an award of damages. Such is not the case. The question presented is whether the fees are allowable as expenses of the trustee in administering the trusts. Otherwise, it would be the beneficiary, and not the trusts, who would be liable for the fees.

MCL 700. 826(f); MSA 27.5826(f) provides that a trustee may defend actions, claims or proceedings for the protection of the trustee in the performance of his duties. MCL 700.826(e); MSA 27.5826(e) provides that a trustee may employ attorneys to assist the trustee in the performance of his administrative duties.

The federal litigation was an attempt by appellant to remove the trustee, which would prevent the trustee from administering the trust. The trustee employed attorneys to defend its actions as trustee. In this sense, the legal services in question were performed on behalf of the estate, and the trustee incurred the legal fees in its administration of the estate. Reimbursement is therefore specifically authorized by MCL 700.541; MSA 27.5541, which provides in pertinent part:

"A fiduciary shall be allowed the amount of his or her reasonable expenses incurred in the administration of the estate and shall also have such compensation for his or her services, both ordinary and extraordinary, as the court in which the fiduciary's accounts are settled deems to be just and reasonable."

Appellant quotes the opinion in *In re Baldwin's Estate*, 311 Mich 288, 314; 18 NW2d 827 (1945), for the proposition that a charge for attorney fees made "incident to defending the executor himself from the claim of legatees that he had mishandled

the estate" was "not for the benefit directly or indirectly of the estate, hence this fee is not properly a charge against the estate". Appellant omits the balance of the paragraph, which is highly relevant to the instant case:

"Had the executor fully prevailed and been exonerated from all error, a different conclusion might have been reached. However, numerous errors have been proven against the executor and he should personally pay the cost of his own defense."

*Baldwin* does not stand for the general proposition that attorney fees incurred in defense of a trustee against claims of fraud are never beneficial to the estate but that they are not beneficial under circumstances where the malfeasance of the trustee makes his past (and probably his continued) trusteeship a detriment to the estate. The instant case, by contrast, is one where the trustee has "fully prevailed and been exonerated from all error". We therefore reach a conclusion which is suggested (though not compelled) by *Baldwin*.

*In re Eddy Estate,* 354 Mich 334, 350; 92 NW2d 458 (1958), supplies direct support for the proposition that a trustee's attorney fees in defense of his administration of the trust are allowable as charges against the trust. There, as here, the charge of fraud on the part of the trustee proved to be unfounded, *id.,* 343, and the trustee appears to have been fully exonerated of any wrongdoing. The *Eddy* case involved related litigation in federal court wherein a judgment favorable to the trustee was rendered, including the federal court's allowance of the trustee's attorney fees in the federal litigation as a charge against the trust. *Id.,* 349. It is not clear on what basis the fees in the federal litigation were awarded, although we note

that the case originally began in circuit court and was removed to federal court. We find nothing in *Eddy* which prevents allowance of the fees at issue in the instant case.

Affirmed.