C. Russell WAGSTAFF, individually and as Trustee of the C. Russell Wagstaff Trust, Plaintiff,

v.

MANUFACTURERS NATIONAL BANK OF DETROIT, a national banking association, Defendant.

Civ. A. No. 81–70880.

United States District Court, E.D. Michigan, S.D.

Aug. 8, 1984.

---

Martin J. Leavitt, Northville, Mich., for plaintiff.

David C. Chardavoyne, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER REGARDING MOTION TO REVIEW TAXATION OF COSTS

### PHILIP PRATT, District Judge.

The defendant herein, after having been awarded a jury verdict in its favor, moved for taxation of costs. The Clerk of the Court properly declined, however, to make any determination as to the requested attorney fees and litigation costs. Thereupon, defendant filed the above-mentioned motion.

The defendant asserts that since the defendant was acting as a fiduciary and the claim against it was based on an alleged breach of fiduciary duty, it should be allowed attorney fees and other litigation costs, e.g., expert witness fees.

It is axiomatic that under the "American Rule" the costs that can be awarded to a prevailing party are highly circumscribed, see 28 U.S.C. § 1920, and do not generally include an award of attorney fees. However, an increasing number of statutes permit the inclusion of attorney fees as costs. In addition, federal courts sitting in diversity as in this case defer to state statutes which permit an award of attorney fees to a prevailing party. Recognizing this principle, counsel for the parties here concur that Michigan law should govern whether an award of attorney fees and other extraordinary litigation costs should be made in the case at bar.

Utilizing that principle, defendant contends that since it was sued in its fiduciary capacity, as Co-Trustee of the Wagstaff Trust, and since the jury exonerated it from the charge of a breach of its fiduciary duty, it is entitled to attorney fees under Michigan law. The facts which are pertinent to discussion here are as follows.

C. Russell Wagstaff had been receiving investment advice from the defendant. Wagstaff had established an inter vivos trust with himself as Trustee. The Bank, while named as a Successor Trustee, was not named as a trustee originally. In May, 1976, the Bank suggested that plaintiff invest some funds in its Collective Investment Fund. However, under federal regulations investment in that Fund required that the Bank act as a fiduciary of the Trust. 12 CFR 9.18. Thereupon, plaintiff appointed the Bank as a Co-Trustee of the Wagstaff Trust. Thereafter, the Bank, as Co-Trustee managed the Trust funds and after suffering a loss of approximately $200,000, plaintiff instituted this lawsuit. Ultimately, the single issue presented to the jury for resolution was the alleged breach of fiduciary duty, i.e., that the Bank had failed to fulfill its duty as a Co-Trustee responsibly under the attendant standard of care to the detriment of the Trust.

As a general policy, Michigan is an adherent of the "American Rule" and does not allow an award of attorney fees and litigation costs to a prevailing party absent extraordinary circumstances or a statute permitting such an award. The Bank here relies primarily on a state statute, M.C.L.A. § 700.541, which provides in pertinent part:

"A fiduciary shall be allowed the amount of his or her reasonable expenses incurred in the administration of the estate and shall also have such compensation for his or her services, both ordinary and extraordinary, as the court in which the fiduciary's accounts are settled deems to be just and reasonable."

Michigan courts have interpreted that provision to allow the reimbursement from the corpus of reasonable and necessary fees and costs incurred by a trustee who has prevailed in a suit against it. *In re Gerber Trust,* 117 Mich.App. 1, 323 N.W.2d 567 (1982); *See Cleveland v. Second National Bank & Trust Co.,* 149 F.2d 466 (6th Cir.); *Balch v. Detroit Trust Co.,* 312 Mich. 146, 20 N.W.2d 138 (1945). The approach taken by the Michigan Courts appears to be that under the above-quoted statutory provision regarding payments of reasonable expenses incurred by a fiduciary in the administration of an estate, a fiduciary called upon to defend against charges of malfeasance, fraud or other improper conduct who has fully prevailed and is exonerated may recover the costs of the defense. It is perceived that the exoneration of a fiduciary is of benefit, directly or indirectly, to the estate.

It is of major significance that the above cited cases, and those cited therein, arise in the context of a testamentary trust. As a matter of fact, the relevant statutory provision is included in the Michigan Revised Probate Code. No authority has been cited, nor has this Court's research revealed any, that relates to the kind of relationship present in the case at bar. Lacking clear and specific statutory or common law direction, it is necessary to consider whether the State of Michigan has established a policy of reimbursement to trustees that would bring this case within its ambit.

While it is true that the language of the Michigan cases interpreting the statutory provision is unequivocal and arguably does include *any* trustee who is successful in defending against a charge of misfeasance, it would be erroneous to consider the broad rulings out of the context described above.

In Michigan, testamentary trusts are closely monitored by the probate courts. *See generally* M.C.L.A. § 700.1 *et seq.* (particularly § 700.501 *et seq.*). Compensation and expenses requested by a trustee must be approved by the Probate Court. M.C.L.A. § 700.541. Thus, in contrast to a commercial situation, a testamentary trustee is limited in the fees that can be charged by the Probate Court's discretion rather than by agreement between customer or client and the professional or institutional trustee. This is not to say that a testamentary trustee, particularly an institutional one, does not expect to earn a profit for administering a testamentary trust. The distinction is that the "commercial" trustee can charge fees which could include as part of the cost of doing business the potential expenses of defending, for example, suits charging misfeasance, whereas, it is hardly likely that a Probate Court would approve fees that included such potential expenses.

It appears imminently logical, then, to permit reimbursement from the corpus in the case of a testamentary trust when a trustee who is without fault is required to answer charges of misconduct in the administration of the estate. Having no cushion of profit and not having reduced the corpus by annually approved fees which included such potential expenses, the trustee should not be called upon to pay from his own pocket the reasonable expenses incurred by claims of misfeasance.

That Michigan draws a distinction between testamentary trusts and inter vivos trusts is evident in the language of other provisions of the Revised Probate Code, M.C.L.A. § 700.801 *et seq.* Assuming a trust is registered (testamentary trusts are specifically excluded, M.C.L.A. § 700.-801(2)(a)) and, therefore, comes under the jurisdiction of the probate court, that court is discouraged from continuing supervisory control over the trust. The Code provides:

"Neither registration of an inter vivos trust nor a proceeding under this section result in continuing supervisory proceedings. The management and distribution of a trust estate, submission of accounts

and reports to beneficiaries, payment of trustee's fees and other obligations of the trust, acceptance and change of trusteeship, and other aspects of the administration of a trust shall proceed expeditiously consistent with the terms of the trust, free of judicial intervention and without order, approval or other action of any court, subject to the jurisdiction of the court as invoked by interested parties or as otherwise exercised as provided by law."

M.C.L.A. § 700.805(2).

In the case at bar the most visible trappings are of a commercial transaction. The Bank had established a Collective Investment Fund in accordance with federal law. This investment scheme permitted the Bank to sell shares in the fund to its clients. Thus there was established a pool from which the Bank could invest in various securities, commercial paper, and bonds. The choice for plaintiff was participation in "Fund B" which invested primarily in municipal bonds. The Bank, through its investment advisors, chose the particular securities that its fund would purchase and sell and would account to the client on a monthly basis and charge a fee based on the amount of the client's investment. The procedure followed by the Bank was to determine first the objects and aims of the client and then advise in which sub group the client should participate. After that decision was made, the client did not participate in the decision as to which securities should be purchased or sold, but rather could only sell his shares of the fund back to the Bank at the current value, retain his investment or increase it.

In short, in this Court's opinion, the most accurate characterization of the foregoing circumstances is a commercial investment plan which, because of its feature of substantial control over a client's funds, required that the Bank be charged with the higher standard of care associated with fiduciaries.

■ Viewing and characterizing the circumstances in that light, this Court concludes that absent clear direction from the Michigan Legislature or the Michigan courts, there was no intent or contemplation in the Michigan statutes or common law that would sustain the Bank's position.

The Motion to Review Taxation of Costs is, therefore, denied.

IT IS SO ORDERED.