# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* GERALD L. POLLACK TRUST.

---

LOREN POLLACK,

        Petitioner-Appellant,

and

LESLIE POLLACK,

        Petitioner,

v

RONALD M. BARRON and J.P. MORGAN CHASE,

        Respondents-Appellees,

and

CHERYL POLLACK and JUSTIN POLLACK,

        Appellees,

and

LORI EPSTEIN, MICHAEL MCEVILLY, ALEX KOCOVES, and LISA CHABEN,

        Interested Persons.

FOR PUBLICATION
January 29, 2015
9:00 a.m.

No. 309796
Oakland Probate Court
LC No. 2010-328587-TV

---

*In re* Estate of GERALD L. POLLACK.

---

LOREN POLLACK and LESLIE POLLACK,

        Appellants,

-1-

v

RONALD M. BARRON, J.P. MORGAN CHASE,
and CHERYL POLLACK

       Appellees,

and

LISA CHABEN, LORI POLLACK a/k/a LORI
EPSTEIN, and JUSTIN POLLACK,

       Interested Persons.

No. 310844
Oakland Probate Court
LC No. 2009-324651-DE

---

*In re* GERALD L. POLLACK TRUST.

---

LOREN POLLACK and LESLIE POLLACK,

       Petitioners-Appellants,

v

RONALD M. BARRON and J.P. MORGAN
CHASE,

       Respondents-Appellees,

and

CHERYL POLLACK and JUSTIN POLLACK,

       Appellees,

and

LORI EPSTEIN, MICHAEL MCEVILLY, ALEX
KOCOVES, and LISA CHABEN,

       Interested Persons.

No. 310846
Oakland Probate Court
LC No. 2010-328587-TV

*In re* GERALD L. POLLACK TRUST.

LOREN POLLACK and LESLIE POLLACK,

      Petitioners-Appellants,

v

                                        No. 318883

RONALD M. BARRON, Co-Trustee,

                                      Oakland Probate Court

      Respondent-Appellee,

                                      LC No. 2010-328587-TV

and

J.P. MORGAN CHASE,

      Respondent,

and

LORI EPSTEIN, CHERYL POLLACK,
MICHAEL MCEVILLY, ALEX KOCOVES,
LISA CHABEN, and JUSTIN POLLACK,

      Interested Persons.

Before: FORT HOOD, P.J., and HOEKSTRA and O'CONNELL, JJ.

FORT HOOD, P.J.

In Docket No. 309796, petitioner Loren Pollack ("Loren") appeals as of right an order granting co-trustee Ronald M. Barron's ("Barron") motion for summary disposition of Loren's petition to set aside the Gerald L. Pollack Trust ("the Trust" or "the October Trust"), entered on March 15, 2012. In Docket No. 310844, Loren and petitioner Leslie Pollack ("Leslie") appeal as of right an order granting Cheryl Pollack's ("Cheryl") motion for summary disposition on Loren and Leslie's petition to set aside Gerald L. Pollack's will ("the Will" or "the October Will"), entered on May 29, 2012. In Docket No. 310846, Loren and Leslie appeal as of right an order granting Barron's motion for summary disposition regarding Leslie's petition to set aside the Trust, Loren's amended petition to modify or reform the Trust, and Leslie's petition to modify or reform the Trust, entered on May 29, 2012. In Docket No. 318883, Loren and Leslie appeal as of right an order granting Barron's motion for summary disposition on Loren and Leslie's

petition for removal of Barron as co-trustee of the Trust, entered on October 10, 2013. The four appeals were consolidated to advance the efficient administration of the appellate process.[1] We affirm.

## I. UNDERLYING FACTS

These cases involve extremely contentious probate court litigation arising out of the death of Gerald L. Pollack ("Gerald") on June 27, 2009, following a protracted battle with brain cancer. Gerald was the owner and director of Gerald L. Pollack & Associates, Inc. ("GLP"), GLP Investment Services ("Investment Services") and GLP Specialty Services ("Specialty Services"). GLP and Investment Services are investment firms that specialize in selling annuities, insurance products, and securities to public schools and school systems in Michigan. GLP and Investment Services are the primary assets of Gerald's estate. Gerald was survived by his second wife, Cheryl. Justin Pollack is the child of Gerald and Cheryl. Loren, Leslie, Lisa Chaben, and Lori Pollack are Gerald's children from his first marriage. Barron has served as general legal counsel to GLP and Investment Services since the 1980s and was a personal friend of Gerald's. Barron and J.P. Morgan Chase ("JPMC") are co-trustees of the trust at issue in this case and co-personal representatives of Gerald's estate. According to Loren, Loren and a GLP employee named Alex Kocoves were part of Gerald's succession plan for his businesses; Loren and Kocoves were each sold GLP stock by Gerald.

Gerald was diagnosed with brain cancer in the summer of 2008. Following this diagnosis, Barron wrote an August 5, 2008 letter to Gerald recognizing that Loren and Kocoves would continue to co-manage GLP after Gerald's death, that Cheryl and each of Gerald's children would share in the profitability of the businesses, and that Cheryl and each of Gerald's children would receive a portion of the ownership and income from the businesses. In September 2008, Gerald executed a will ("the September Will") and a trust ("the September Trust"). Barron drafted both of these documents at Gerald's direction and with input from Gerald. According to Loren, the September Will and the September Trust were the culmination of a lengthy and detailed process of preparation by Gerald for the continued wellbeing of his family and businesses following his death, and both September documents carried out Gerald's intent as set forth in numerous other documents prepared as part of his estate plan. According to Barron, however, the August 5, 2008 letter was merely a temporary "band aid" until formal estate planning documents could be prepared; likewise, the September estate planning documents were merely interim documents prepared until proper and permanent documents could be put in place.

In October 2008, attorney Charles Nida was hired to prepare a second will and trust for Gerald. According to Loren, it was Barron who recruited Nida, and Gerald had no contact with Nida until the October Will and the October Trust were executed on October 30, 2008. Loren alleged that Nida took direction from Barron or other attorneys at Barron's law firm. Barron denied Loren's allegations, and asserted that Nida had been in contact with Gerald before the

---

[1] *In re Gerald L Pollack Trust*, unpublished order of the Court of Appeals, entered November 6, 2013 (Docket Nos. 309796, 310844, 310846, 318883).

execution of the October estate planning documents. Nida had conversations not only with Barron but also with Gerald's former estate planning attorney, Don L. Rosenberg, and Gerald's personal banker and former co-trustee, David Clark. On October 30, 2008, Nida visited with Gerald at Gerald's home. The estate documents were already finalized at that point, and Nida reviewed a written summary of the documents with Gerald. Gerald executed the October Will and the October Trust on that date.

Loren alleges that the October Trust differs significantly from the September Trust; in particular, Gerald's children do not receive any immediate benefit from the October Trust until Cheryl's death; Cheryl's life expectancy is 20 years. Also, Loren contends, the October Trust does not provide for the succession planning desired by Gerald in that it does not distribute shares of GLP to Loren or provide for the continued operation of GLP by Loren and Kocoves. Rather, the October Trust directs Gerald's assets to a marital share for Cheryl's benefit up to $10 million; until this marital share is completely funded, or Cheryl dies, Gerald's children may receive nothing. Even after Cheryl dies, Loren would receive only a beneficial share of the trust corpus rather than stock in GLP.

Four actions in relation to Gerald's Will and Trust were filed in the trial court and form the basis of this appeal. The trial court ultimately granted summary disposition in each case, and dismissed the actions. Petitioners now appeal.

## II. DOCKET NUMBER 309796

### A. STATUTE OF LIMITATIONS

In docket number 309796, Loren argues that the trial court erred in granting Barron's motion for summary disposition based on the expiration of the statute of limitations. We disagree.

"This Court reviews de novo a trial court's decision on a motion for summary disposition." *Hackel v Macomb Co Comm*, 298 Mich App 311, 315; 826 NW2d 753 (2012). Summary disposition under MCR 2.116(C)(7) may be granted when a statute of limitations bars a claim. *Prins v Mich State Police*, 291 Mich App 586, 589; 805 NW2d 619 (2011). If the facts are not in dispute, the issue whether a claim is barred by the applicable statute of limitations presents a question of law that is reviewed de novo. *Trentadue v Buckler Automatic Lawn Sprinkler Co*, 479 Mich 378, 386; 738 NW2d 664 (2007). Questions of statutory interpretation are likewise reviewed de novo. *Id*. "If the language in a statute is clear and unambiguous, this Court assumes that the Legislature intended its plain meaning, and the statute must be enforced as written. This Court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *Bay City v Bay Co Treasurer*, 292 Mich App 156, 166-167; 807 NW2d 892 (2011) (quotation marks and citations omitted). In addition, this Court "review[s] de novo constitutional issues and any other questions of law that are raised on appeal." *Cummins v Robinson Twp*, 283 Mich App 677, 690; 770 NW2d 421 (2009).

The trial court properly granted Barron's motion for summary disposition because Loren's petition to set aside the October Trust was barred by the statute of limitations in the Michigan Trust Code ("MTC").

The MTC, MCL 700.7101 *et seq.*, which concerns trusts, is Article VII of the Estate and Protected Individuals Code ("EPIC"), MCL 700.700.1101 *et seq.*; the MTC became effective on April 1, 2010, which was 10 years after EPIC itself went into effect. See MCL 700.7101; MCL 700.7102; 2009 PA 46; 1998 PA 386; *Indep Bank v Hammel Assoc, LLC*, 301 Mich App 502, 509; 836 NW2d 737 (2013). MCL 700.7604(1) is a provision of the MTC that prescribes limitation periods for bringing a challenge to the validity of a trust:

> (1) A person may commence a judicial proceeding to contest the validity of a trust that was revocable at the settlor's death within the earlier of the following:
>
> (a) Two years after the settlor's death.
>
> (b) Six months after the trustee sent the person a notice informing the person of all of the following:
>
> (*i*) The trust's existence.
>
> (*ii*) The date of the trust instrument.
>
> (*iii*) The date of any amendments known to the trustee.
>
> (*iv*) A copy of relevant portions of the terms of the trust that describe or affect the person's interest in the trust, if any.
>
> (*v*) The settlor's name.
>
> (*vi*) The trustee's name and address.
>
> (*vii*) The time allowed for commencing a proceeding.

Thus, under the MTC, a challenge to the validity of a trust must be brought within two years after the settlor's death or six months after the provision of a notice containing statutorily prescribed information, whichever is earlier.

It is undisputed that, if the statute of limitations in MCL 700.7604(1) applies, then Loren's petition was not timely filed. The settlor, Gerald, died on June 27, 2009. On May 6, 2010, the trustees sent to Loren and the other beneficiaries a written notice containing all of the statutorily prescribed information concerning the Trust. Loren concedes that the notice contained all of the information required by MCL 700.7604(1)(b). The notice explicitly advised Loren: "You have six months to contest the validity of the Trust pursuant to MCL 700.7604(1)(b)(vii). Any contest filed after the six-month period will be time-barred." In the summer of 2010, during settlement negotiations that were ultimately unsuccessful, the parties twice expressly agreed to toll the six-month limitations period for bringing a challenge to the

Trust, each time for a period of 30 days. In effect, then, the six-month limitations period in MCL 700.7604(1)(b) was tolled for 60 days, moving the statutory deadline for filing a petition challenging the validity of the Trust from November 6, 2010, to January 5, 2011. Loren commenced this proceeding on September 23, 2011, by filing his petition challenging the validity of the Trust. See MCL 700.1106(r) (defining a "[p]roceeding" for purposes of EPIC to include, *inter alia*, a petition); MCR 5.101(B) ("A proceeding [in probate court] is commenced by filing an application or a petition with the court."). The proceeding was therefore commenced more than two years after Gerald died and more than eight months (the six-month statutory period and the 60-day tolling period) after the statutory notice concerning the Trust was sent to the beneficiaries. Loren concedes that his petition would be untimely under the MTC limitations period.

Loren contends, however, that the MTC statute of limitations does not apply in this case. In particular, Loren asserts that because the MTC became effective after Loren had already acquired his right to challenge the validity of the Trust, the MTC limitations period cannot apply. It is true that statutes of limitations are generally limited to prospective application unless the Legislature clearly and unequivocally manifests a contrary intent. *Davis v State Employees' Retirement Bd*, 272 Mich App 151, 161; 725 NW2d 56 (2006). "The legislature may pass statutes of limitation and give them retroactive effect." *Evans Prod Co v Fry*, 307 Mich 506, 546; 12 NW2d 448 (1943). In assessing whether this case involves an improper retroactive application of a statute of limitations, it must be remembered that the six-month statutory period set forth in MCL 700.7604(1)(b) did not commence to run until *after* the MTC's effective date. That is, the six-month period was triggered when the trustees sent to Loren and the other beneficiaries the statutorily prescribed notice concerning the Trust. This notice was sent on May 6, 2010, after the April 1, 2010 effective date of the MTC, and explicitly advised Loren of the six-month statutory period. Because the limitations period did not begin to run until after the MTC's effective date, Loren had the full six-month period to file suit that all other beneficiaries have after the provision of notice under the MTC. Therefore, the statute of limitations in this case did not fail to provide a reasonable time after its passage for the commencement of suit. Cf. *Price v Hopkin*, 13 Mich 318, 324-325 (1865) ("It is of the essence of a law of limitation that it shall afford a reasonable time within which suit may be brought and a statute that fails to do this cannot possibly be sustained as a law of limitations, but would be a palpable violation of the constitutional provision that no person shall be deprived of property without due process of law.") (citations omitted).

Moreover, the Legislature has clearly and unequivocally manifested its intent to apply the MTC statute of limitations in the circumstances of this case, where the proceeding was commenced after the effective date of the MTC. MCL 700.8206(1) provides, in relevant part:

> (1) Except as otherwise provided in article VII [i.e., the MTC], all of the following apply on the effective date of the amendatory act that added this section:

> (a) The amendments and additions to article VII enacted by the amendatory act that added this section apply to all trusts created before, on, or after that effective date.

(b) The amendments and additions to article VII enacted by the amendatory act that added this section apply to all judicial proceedings concerning trusts commenced on or after that effective date.

This provision states that the MTC applies to trusts that were created before, on, or after the effective date of the MTC, thereby encompassing all trusts, and that the MTC applies to all judicial proceedings concerning trusts that are commenced on or after the MTC's effective date. As discussed, the MTC went into effect on April 1, 2010. Loren commenced this proceeding on September 23, 2011, by filing his petition challenging the validity of the Trust. Therefore, this proceeding was commenced after the effective date of the MTC. It follows, then, that under MCL 700.8206(1), the MTC, which includes the limitations periods set forth in MCL 700.7604(1), applies to this case.[2]

Loren contends, however, that the MTC statute of limitations cannot apply in this case in light of MCL 700.8206(2), which states:

The amendments and additions to article VII enacted by the amendatory act that added this section do not impair an accrued right or affect an act done before that effective date. If a right is acquired, extinguished, or barred upon the expiration of a prescribed period that has commenced to run under any other statute before that effective date, that statute continues to apply to the right even if it has been repealed or superseded.

See also *Indep Bank*, 301 Mich App at 509 ("The MTC applies to trusts created before its enactment, but does not impair accrued rights or affect an act done before its effective date."), citing MCL 700.8206(1)(a) and (2). Loren argues that application of the MTC statute of limitations in this case would impair his accrued right to challenge the validity of the Trust. We disagree and hold that Loren's right to challenge the validity of the Trust did not accrue before

---

[2] MCL 600.5869 states: "All actions and rights shall be governed and determined according to the law under which the right accrued, in respect to the limitations of such actions or right of entry." In docket number 310846, Leslie contends that this provision precludes application of the statute of limitations in MCL 700.7604(1) because his right of action accrued before the MTC's effective date. We reject Leslie's claim. "Statutes of limitation operate prospectively unless an intent to have the statute operate retrospectively clearly and unequivocally appears from the context of the statute itself." *Pryber v Marriott Corp*, 98 Mich App 50, 55; 296 NW2d 597 (1980). In *Pryber*, this Court held that a statute of limitations enacted after the accrual of the plaintiffs' cause of action was applicable despite the language of MCL 600.5869, because the amended statute at issue in *Pryber* contained language indicating that it applied "to all actions hereinafter commenced and all actions heretofor commenced now pending in the trial or appellate courts." *Id*. at 55, quoting MCL 600.5861. To the extent that the legislative directive in MCL 700.8206(1) irreconcilably conflicts with MCL 600.5869, the more recently enacted MCL 700.8206(1) must be regarded as an exception to or qualification of the directive in MCL 600.5869. *Pryber*, 98 Mich App at 56.

the effective date of the MTC, and, even if the right had accrued, the application of the six-month statutory period did not impair that right.

Loren did not have an accrued right to bring his Trust challenge petition before the effective date of the MTC. Neither the MTC nor EPIC defines the term "accrued right." However, this Court has addressed the meaning of "accrued right" in cases concerning EPIC.

In *In re Smith Estate*, 252 Mich App 120, 124-125; 651 NW2d 153 (2002), this Court addressed the applicability of an EPIC provision allowing the admission of extrinsic evidence to prove the existence of testamentary intent with respect to a purported codicil to an existing will. The action was commenced before the effective date of EPIC, but the case remained pending when EPIC took effect. *Id*. at 127. This Court held that the EPIC provision was applicable. *Id*. at 126. This Court noted that under MCL 700.8101(2)(b), EPIC applied to a proceeding pending on the date that EPIC became effective, but that under MCL 700.8101(2)(d), EPIC "does not impair an accrued right or an action taken before that date in a proceeding." *Smith*, 252 Mich App at 126. This Court rejected the probate court's conclusion that the decedent's heirs had an accrued right to inherit disputed funds pursuant to the existing will rather than under the purported codicil. *Id*. Noting that EPIC did not define the term "accrued right," this Court looked to the Michigan Supreme Court's decision in *In re Finlay Estate*, 430 Mich 590, 600, n 10; 424 NW2d 272 (1988), which held that "accrued" was closely analogous to the term "vested" and referred to a right of which a person could not be denied without his assent and which a person could legally assert independent of any future condition of things or subsequent change of existing law. *Smith*, 252 Mich App at 127. This Court also noted case law definitions of "vested" as meaning a right so fixed that it is not dependent on any future act or contingency. *Id*. at 127-128. The *Smith* Court concluded that no accrued right existed in that case:

> Although to some extent a devise under a will is vested upon the death of the testator because the testator can no longer change the will, we conclude that it is not an "accrued right" under the act because it is not so fixed that it cannot be changed. Rather, it can be changed in conjunction with a showing under the EPIC that there is a more recent will or a partial or complete revocation, or an addition or alteration of the decedent's will, or a partial or complete revival of a formerly revoked will or a formerly revoked portion of a will. In other words, in order to avoid rendering other sections of the act nugatory, including subsection 8101(2)(b) providing that the act applies in pending proceedings, an "accrued right" must mean something other than a right under a will upon the testator's death. Rather, in the context of the act, an "accrued right" is a legal right to the exclusion of any other right or claim to it. The rights outlined in a testamentary instrument involved in probate do not so definitely belong to a person that they cannot be impaired or taken away without the person's consent. In the instant case, the rights of respondents under Smith's existing will are contingent upon the pending determination of the relationship of the document at issue to the will under the act. [*Id*. at 128-129 (citations omitted).]

Likewise, in *In re Leete Estate*, 290 Mich App 647, 663-664; 803 NW2d 889 (2010), this Court upheld the applicability of an EPIC provision known as the 120-hour rule or simultaneous death provision, even though the property deed and the will at issue were adopted before the

effective date of EPIC. This Court noted that "EPIC applies to a governing instrument executed before EPIC came into effect, as long as it does not affect an accrued right and as long as the governing instrument does not contain a contrary intent." *Id.* at 663. This Court held that no accrued right would be impaired by applying EPIC. *Id.* After noting the definition of "accrued right" set forth in *Smith*, the *Leete* Court held that the appellant had obtained no fixed or accrued right by way of the will before the effective date of EPIC. *Id.* at 663-664. Further, the appellant obtained no such right when the decedents died because the appellant's interest in the property at issue was still subject to change. *Id.* at 664. Thus, EPIC was applicable. *Id.*

Although *Smith* did not involve a statute of limitations issue, *Smith* explicated the meaning of the term "accrued right" as used in a provision of EPIC. Because the MTC is a component of EPIC, and because the term "accrued right" is also used in the MTC provision at issue here, MCL 700.8206(2), we find it useful to consider the analysis of that term in *Smith* when determining whether Loren possessed an accrued right before the effective date of the MTC.[3]

Loren contends that he had an accrued right to challenge the October Trust before the MTC became effective, so the MTC statute of limitations cannot be applied to impair that right. However, Loren did not have a right to challenge the Trust that was so fixed that it could not be changed by a future act or contingency. *Smith*, 252 Mich App at 127-129. Loren's right to challenge the Trust could be changed or forfeited in various ways. For example, if Loren accepted a partial distribution under the Trust, he would be estopped from challenging the Trust under the doctrine of election. See *In re Beglinger Trust*, 221 Mich App 273, 276-277; 561 NW2d 130 (1997). Other contingencies such as the application of the doctrine of laches, a waiver, or a release could also have changed or taken away Loren's right to challenge the Trust. To the extent that Loren's interest as a Trust beneficiary, as opposed to his right to challenge the Trust, is at issue, that interest also is not so fixed or immutable that it excludes all other interests. Cheryl is the only current beneficiary because the Trust corpus is insufficient to fund the entire marital trust at this time, and Cheryl could deplete the corpus in her lifetime. Accordingly, Loren's interest is not so fixed or immutable that it constitutes an accrued right.

Nonetheless, even assuming that Loren's right to challenge the Trust constituted an accrued right, the application of the MTC statute of limitations did not impair that accrued right. Because the MTC and EPIC do not define the word "impair," it is permissible to consider a dictionary definition of the term. *Bedford Pub Sch v Bedford Ed Ass'n MEA/NEA*, 305 Mich App 558, 566 n 2; 853 NW2d 452 (2014). The word "impair" means "to make or cause to become worse; weaken; damage." *Random House Webster's College Dictionary* (2001). In *Finlay*, 430 Mich at 596-600, our Supreme Court upheld the application of a Revised Probate Code (RPC) provision creating a presumption concerning the testator's intent regarding the effect of a divorce, even though the divorce judgment was entered before the effective date of the

---

[3] We note that Loren relies on *In re Ervin Trust*, unpublished opinion per curiam of the Court of Appeals, issued February 24, 2005 (Docket Nos. 249974, 253745, 253824). Unpublished opinions are not binding under the rule of stare decisis. MCR 7.215(C)(1).

RPC. A RPC provision provided that "[a]n act done before the effective date [of the RPC] in any proceeding and any accrued right is not impaired by this act." MCL 700.992(c), repealed by 1998 PA 386. This Court held that the application of the RPC provision regarding the testator's presumed intent "does not impair any 'act' of the circuit court in decreeing the divorce of the testator, but merely alters the presumed intent of the testator following her divorce." *Finlay*, 430 Mich at 600.

Likewise, the application of the MTC statute of limitations did not impair, i.e., weaken, worsen, or damage, Loren's right to challenge the Trust. "Statutes of limitation are procedural devices intended to promote judicial economy and the rights of defendants." *Stephens v Dixon*, 449 Mich 531, 534; 536 NW2d 755 (1995). "They also prevent plaintiffs from sleeping on their rights." *Id*. Application of the MTC six-month statutory limitations period did not deprive Loren of his right to challenge the Trust. It merely required him to do so within the procedural framework enacted by the MTC, i.e., within six months after receiving the statutorily prescribed notice from the trustees, with, in this case, an additional 60 days pursuant to the parties' express agreement to toll the six-month limitations period. The six-month period did not begin running until after the MTC went into effect; Loren received the benefit of the full six-month period afforded to all beneficiaries who receive the requisite notice under the MTC. Accordingly, the application of the MTC statute of limitations did not impair any accrued right in this case.

Next, Loren suggests that the application of the MTC statute of limitations is also barred by the second sentence of MCL 700.8206(2); again, that provision states:

> The amendments and additions to article VII enacted by the amendatory act that added this section do not impair an accrued right or affect an act done before that effective date. *If a right is acquired, extinguished, or barred upon the expiration of a prescribed period that has commenced to run under any other statute before that effective date, that statute continues to apply to the right even if it has been repealed or superseded*. [Emphasis added.]

Loren asserts that the "right" referenced in the second sentence does not have to be an accrued right. He contends that the trial court improperly inserted the word "accrued" into the second sentence of MCL 700.8206(2). However, statutory language "cannot be read in a vacuum." *GC Timmis & Co v Guardian Alarm Co*, 468 Mich 416, 421; 662 NW2d 710 (2003). "Although a phrase or a statement may mean one thing when read in isolation, it may mean something substantially different when read in context. In seeking meaning, words and clauses will not be divorced from those which precede and those which follow." *Id*. (quotation marks and citations omitted). It appears evident that the word "right" in the second sentence of MCL 700.8206(2) is a reference to the term "accrued right" used in the immediately preceding sentence. In other words, the second sentence serves to effectuate the first sentence by providing that accrued rights acquired, extinguished, or barred upon the expiration of a prescribed period that began under

another statute before the effective date of the MTC continue to be governed by the other statute.[4]

Moreover, even if the second sentence of MCL 700.8206(2) applies to rights that are not accrued, the second sentence does not apply here. Loren has no rights that were acquired, extinguished, or barred upon the expiration of a prescribed period that began to run before the MTC's effective date. Loren asserts that before the adoption of the MTC, the general six-year statute of limitations set forth in MCL 600.5813 applied to a trust challenge, and that this period began to run before the effective date of the MTC. But Loren fails to explain what rights he had that were acquired, extinguished, or barred upon the expiration of that limitations period. Loren fails to explain how his proposed interpretation takes account of the statutory phrase "upon the expiration of" and to address the fact that the supposedly applicable six-year limitations period would not have expired as of the effective date of the MTC. "Effect must be given to every word, phrase, and clause in a statute, and the court must avoid a construction that would render part of the statute surplusage or nugatory." *Book-Gilbert v Greenleaf*, 302 Mich App 538, 541; 840 NW2d 743 (2013). Giving effect to the entire second sentence of MCL 700.8206(2) makes clear that it applies when a right is acquired, extinguished, or barred upon the expiration of a prescribed period under another statute. In other words, if a right was acquired or extinguished when a prior limitations period expired, that right has not been respectively lost or revived by the enactment of the MTC. Loren's right to bring this action was not acquired or extinguished by the expiration of a prior limitations period, rendering his argument premised on the second sentence of MCL 700.8206(2) devoid of merit.

Finally, Loren contends that the application of the MTC statute of limitations violates constitutional due process principles by impairing Loren's vested right to bring his Trust challenge. We disagree. Generally, "[t]he legislature may pass statutes of limitation and give them retroactive effect." *Evans Prod Co*, 307 Mich at 546. Nonetheless, the retroactive application of a statute of limitations may offend due process if a claimant is not afforded a reasonable time to file suit. See *Price*, 13 Mich at 324-325 ("It is of the essence of a law of limitation that it shall afford a reasonable time within which suit may be brought and a statute that fails to do this cannot possibly be sustained as a law of limitations, but would be a palpable

---

[4] In docket number 310846, Leslie further expands on this point and relies on dictum in *Finlay*, 430 Mich at 600, stating that a provision of the RPC similar to MCL 700.8206(2) was inapplicable because neither party had acquired any "accrued or nonaccrued" rights. However, there was no analysis in *Finlay* concerning whether the second sentence was meant to create a separate exception or was merely an effectuation of the first sentence of the analogous RPC provision. The Supreme Court's isolated statement in *Finlay* regarding "accrued or nonaccrued rights" comprised mere dictum because it was unnecessary to the decision in the case, given that the Court found the analogous RPC provision inapplicable and therefore upheld the application of the new law. See *Carr v City of Lansing*, 259 Mich App 376, 383-384; 674 NW2d 168 (2003) (a judicial comment that was unnecessary to the decision comprised mere dictum that was not binding). Thus, we are not persuaded that the second sentence of MCL 700.8206(2) applies to accrued and nonaccrued rights.

violation of the constitutional provision that no person shall be deprived of property without due process of law.") (citations omitted); see also *O'Brien v Hazelet & Erdal*, 410 Mich 1, 15 n 18; 299 NW2d 336 (1980) (citing *Price* for the proposition that a statute may deny due process if it fails to afford a reasonable time to bring suit). Loren received the full six-month statutory period to bring his claim after receiving the requisite notice from the trustees, and an additional 60 days pursuant to the parties' tolling agreements. The notice that triggered the six-month period was provided after the effective date of the MTC, and Loren concedes that the notice contained all of the statutorily prescribed information, including the time allowed for commencing the proceeding. Loren was thereby afforded the same notice and the same time in which to file suit as all other beneficiaries under the MTC. Because the application of the MTC statute of limitations afforded Loren a reasonable time to file suit, his due process claim lacks merit.

In sum, the trial court properly granted Barron's motion for summary disposition because Loren's petition to set aside the October Trust was barred by the statute of limitations in the MTC.

## III. DOCKET NUMBER 310844[5]

### A. UNDUE INFLUENCE

In docket number 310844, petitioners first argue that trial court erred in finding that there was insufficient evidence of benefit to Barron to support the petition to set aside the October Will on grounds of undue influence. We disagree.

"This Court reviews de novo a trial court's decision on a motion for summary disposition." *Hackel*, 298 Mich App at 315. "In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). "Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

The trial court properly granted Cheryl's motion for summary disposition on the petition to set aside the October Will because there was no evidence to establish the benefit element of a presumption of undue influence.

---

[5] Leslie has filed a separate appellate brief in Docket No. 310844, and adopts the arguments contained in Loren's brief in that appeal. Therefore, we do not separately address the issues in Leslie's brief.

A party contesting a will has the burden of establishing undue influence. MCL 700.3407(1)(c), (d).

> To establish undue influence it must be shown that the grantor was subjected to threats, misrepresentation, undue flattery, fraud, or physical or moral coercion sufficient to overpower volition, destroy free agency, and impel the grantor to act against the grantor's inclination and free will. Motive, opportunity, or even ability to control, in the absence of affirmative evidence that it was exercised, is not sufficient.

> A presumption of undue influence arises upon the introduction of evidence that would establish (1) the existence of a confidential or fiduciary relationship between the grantor and a fiduciary, (2) the fiduciary, or an interest represented by the fiduciary, benefits from a transaction, and (3) the fiduciary had an opportunity to influence the grantor's decision in that transaction. [*In re Erickson Estate*, 202 Mich App 329, 331; 508 NW2d 181 (1993) (citation omitted).]

On appeal, petitioners do not assert that there was direct evidence of undue influence but contend that there was evidence establishing the elements giving rise to a presumption of undue influence. The primary element in dispute concerns whether Barron benefited from the transaction.

"Appointment of the scrivener as trustee alone does not create a substantial benefit sufficient to raise the presumption of undue influence." *In re Vollbrecht Estate*, 26 Mich App 430, 436; 182 NW2d 609 (1970). "[T]he mere appointment of a fiduciary as executor of the will, or even trustee of a limited testamentary trust, would not alone establish the kind of benefit necessary to raise the presumption [of undue influence]." *Id*. "The determination should be made in light of all the powers, privileges, and duties given the trustee and all the instruments concerned." *Id*. at 437. This Court in *Vollbrecht* found sufficient evidence for the jury to find a substantial personal benefit necessary to raise the presumption because there was "evidence that the trustees of the charitable foundation have the power to amend the articles of incorporation, determine its activities, and fix their own fees." *Id*.

In this case, there was insufficient evidence of personal substantial benefit to Barron to give rise to a presumption of undue influence. Although Barron serves as a co-trustee of the Trust along with JPMC, this fact alone does not comprise a sufficient benefit to give rise to the presumption. *Id*. at 436. Further, Barron must make all decisions as co-trustee in conjunction with the other co-trustee, JPMC, and petitioners have not alleged that JPMC has exerted undue influence or acted improperly in connection with this matter.

In addition, Barron received no substantial benefit from the October Will that he did not already receive under the September Will, which petitioners conceded reflected Gerald's intent. Although petitioners at one point assert on appeal that there are "substantial differences" between the September Will and the October Will, petitioners do not explicate any significant differences with respect to the benefits conferred on Barron by the two wills, and petitioners later admit that the October Will reflects little if any change from the September Will in respect to the benefits conferred on Barron. Indeed, petitioners state that the terms of the September Will

benefitting Barron were "mostly carried over into the October Will." Although petitioners assert on appeal that the September Will was also the product of undue influence, petitioners made no such claim in the trial court. Failure to timely raise an issue in the trial court generally waives review of that issue on appeal. *Napier v Jacobs*, 429 Mich 222, 227-228; 414 NW2d 862 (1987).

Further, petitioners expressly alleged in the trial court that the September Will and the September Trust carried out Gerald's intent as set forth in a letter by Gerald and in voluminous documents prepared by Gerald in respect to his estate planning. "A party may not take a position in the trial court and subsequently seek redress in an appellate court that is based on a position contrary to that taken in the trial court." *Holmes v Holmes*, 281 Mich App 575, 587-588; 760 NW2d 300 (2008) (citation omitted). Because petitioners conceded in the trial court that the September Will and the September Trust reflected Gerald's intent as demonstrated in numerous earlier estate planning documents, and because Barron did not receive a substantial benefit from the October Will that differed from that afforded under the September Will, petitioners have not established that Barron received a benefit from the October Will sufficient to give rise to a presumption of undue influence.

Given that petitioners have not established the benefit prong required to give rise to a presumption of undue influence, it is unnecessary to address the other two prongs.

## B. MISTAKE

Petitioners next argue that the trial court erred in granting Cheryl's motion for summary disposition on the petition to set aside the October Will on the grounds of mistake.[6] We disagree. Again, this Court reviews de novo a motion for summary disposition. *Hackel*, 298 Mich App at 315.

The trial court properly granted Cheryl's motion for summary disposition on the petition to set aside the October Will because there was no genuine issue of material fact concerning petitioners' claim of mistake.

---

[6] Petitioners also contend that that Cheryl failed to request summary disposition with respect to the claim of mistake, and, thus, the trial court erred in granting summary disposition on that issue. In the petition to set aside the October Will, petitioners summarily alleged that the October Will was invalid because of a mistake of fact. Cheryl's motion for summary disposition addressed the allegations of undue influence rather than the cursory mistake allegations. Nonetheless, Cheryl's motion asked that the court admit the October Will to probate. In light of this request, it was clear that Cheryl was asking for summary disposition with respect to the entire petition. Moreover, a contestant of a will has the burden of establishing mistake. MCL 700.3407(1)(c), (d). The parties also addressed the issue of mistake in subsequent briefing. For these reasons, we hold that that Cheryl sought summary disposition with respect to the entire petition to set aside the October Will and that the parties had a fair opportunity to litigate the issue of mistake. Therefore, we address only the substantive arguments in relation to this issue.

The allegation of mistake in the petition was that Nida failed to inform Gerald which trust the October Will would fund. There is no evidence in the record that Gerald was mistaken on this point. Clark testified that the operation of the October Trust and the distribution of assets were discussed with Gerald when the October estate documents were executed, that Gerald asked questions, and that the participants made sure Gerald understood what was happening. Nida testified that he asked Gerald at the time of the execution of the October estate documents if Nida had captured Gerald's wishes. The evidence does not present a question of fact concerning whether Gerald was mistaken regarding which trust would be funded by the October Will.

On appeal and in response to the summary disposition motion, petitioners changed the factual basis for the allegation of mistake from that set forth in the petition. Petitioners now contend that Gerald was mistaken regarding the value of his estate, believing it to be worth $75 million to $100 million, and that this mistake affected Gerald's decision to leave the first $10 million to Cheryl under the marital trust. The record fails to support the view that any mistake regarding the value of the estate affected Gerald's decision. On the contrary, Clark testified that, even after being asked about the possibility that the value of the estate was less than he thought, Gerald adhered to his desire to leave the first $10 million to Cheryl. Thus, there is no genuine issue of material fact concerning whether any mistake regarding the value of the estate affected Gerald's decision to execute the October Will.

## IV. DOCKET NUMBER 310846[7]

### A. STANDING

In docket number 310846, Loren first argues that Barron and JPMC lack standing to oppose the petition to modify or reform the Trust. We disagree.

Initially, we note that this issue is unpreserved. To preserve for appellate review an issue regarding standing, the defendant must have raised the issue in its first responsive pleading or motion. MCL 2.116(C)(5); MCR 2.116(D)(2); *Glen Lake-Crystal River Watershed Riparians v Glen Lake Ass'n*, 264 Mich App 523, 528; 695 NW2d 508 (2004). First, we note that Loren's challenge to the trustees' standing is inapt because Barron and JPMC are not plaintiffs or petitioners who filed this petition and Loren is not a defendant or a respondent who was required to raise standing in his first responsive pleading. In addition, Loren raises this issue for the first time on appeal. Loren argues that the issue of standing may be raised for the first time on appeal because it pertains to jurisdiction. "Subject-matter jurisdiction and standing are not the same thing. Jurisdiction of the subject matter is the right of the court to exercise judicial power over a

---

[7] We note that we decline to address Loren's fourth and final issue raised in docket number 310846 regarding Barron's alternate ground for summary disposition. However, this issue was unpreserved because it was not addressed by the trial court. *Hines v Volkswagen of America, Inc*, 265 Mich App 432, 443; 695 NW2d 84 (2005). This Court "need not address an unpreserved issue." *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 387; 803 NW2d 698 (2010). In addition, we also do not address Leslie's claim regarding fraudulent concealment, which was also unpreserved.

class of cases, not the particular case before it; to exercise the abstract power to try a case of the kind or character of the one pending." *Altman v Nelson*, 197 Mich App 467, 472; 495 NW2d 826 (1992). "Standing, on the other hand, relates to the position or situation of the plaintiff relative to the cause of action and the other parties at the time the plaintiff seeks relief from the court." *Dep't of Social Servs v Baayoun*, 204 Mich App 170, 174; 514 NW2d 522 (1994). Therefore, the decision regarding whether a plaintiff has standing will not affect the trial court's jurisdiction over the subject matter. *Glen Lake*, 264 Mich App at 528. Thus, this issue is unpreserved.

Whether a party has standing is a question of law that this Court reviews de novo. *Id.* at 527. "Review of an unpreserved error is limited to determining whether a plain error occurred that affected substantial rights." *Rivette v Rose-Molina*, 278 Mich App 327, 329; 750 NW2d 603 (2008).

Loren's argument that Barron and JPMC lack standing to oppose the petition to modify or reform the Trust is devoid of merit.

Initially, we note that the issue of the trustees' standing is moot because Cheryl concurred in Barron's motion for summary disposition and it is undisputed that Cheryl possesses standing to oppose Loren's petition to modify or reform the Trust. "This Court's duty is to consider and decide actual cases and controversies." *Morales v Parole Bd*, 260 Mich App 29, 32; 676 NW2d 221 (2003). This Court generally does not address moot questions or declare legal principles that have no practical effect in a case. *Id.* "An issue is moot if an event has occurred that renders it impossible for the court to grant relief. An issue is also moot when a judgment, if entered, cannot for any reason have a practical legal effect on the existing controversy." *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 386; 803 NW2d 698 (2010) (citation omitted). Given that Cheryl concurred in the motion and that Loren has not contested her standing to oppose the petition to modify or reform the Trust, the issue whether Barron or JPMC possessed standing to oppose the petition or to seek summary disposition has no practical legal effect in this case. The court was permitted to grant summary disposition, and the issue of the trustees' standing is moot. However, we address the issue for the sake of thoroughness.

In *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 372; 792 NW2d 686 (2010), the Michigan Supreme Court explicated the following principles regarding standing:

> We hold that Michigan standing jurisprudence should be restored to a limited, prudential doctrine that is consistent with Michigan's longstanding historical approach to standing. Under this approach, a litigant has standing whenever there is a legal cause of action. Further, whenever a litigant meets the requirements of MCR 2.605, it is sufficient to establish standing to seek a declaratory judgment. Where a cause of action is not provided at law, then a court should, in its discretion, determine whether a litigant has standing. A litigant may have standing in this context if the litigant has a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large or if the statutory scheme implies that the Legislature intended to confer standing on the litigant. [Footnotes omitted.]

-17-

It should be noted that the trustees have not asserted a cause of action with respect to this issue. After all, it is Loren who commenced this action by filing his petition to modify the Trust. The trustees merely opposed the petition and moved for summary disposition. In any event, it is clear that the trustees have a special right or substantial interest that will be detrimentally affected in a manner different from the citizenry at large. Although Loren contends that his reformation petition does not seek to invalidate the Trust, and that the trustees therefore have no interest in a dispute between beneficiaries concerning the proper distribution of the Trust's assets, the amended petition itself directly contradicts Loren's argument. The amended petition to modify or reform the Trust explicitly states that Gerald's "execution of the October Trust is invalid due to the 'mistake of fact' under which [Gerald] was acting when he executed the October Trust." The amended petition sought modification or reformation of the Trust to change the distribution of assets and to terminate Barron as a co-trustee. In short, the amended petition asserted the Trust was invalid and sought modification of essential provisions of the Trust concerning the distribution of assets and successor trustees.

Claiming that the Trust is the product of a mistake of fact and seeking to significantly change material provisions concerning the distribution of the Trust's assets and the successor trustees is plainly an attack on the validity of the Trust. The Trust Agreement obligated the trustees to enforce the Trust Agreement in actions challenging the validity of the Trust Agreement. Under the MTC, a trustee is required to administer a trust in accordance with its terms and purposes, MCL 700.7801, and may exercise all of the powers conferred by the terms of the trust, MCL 700.7816(1)(a). See also MCL 700.1105(c) (defining an "[i]nterested person" to include an incumbent fiduciary); MCR 5.125(C)(32)(e) (listing the current trustee as a person interested in the modification or termination of a noncharitable irrevocable trust); MCR 5.125(C)(33)(c) (listing the current trustee as a person interested in a proceeding affecting a trust other than proceedings covered by other subrules).

In *In re Temple Marital Trust*, 278 Mich App 122, 133-134; 748 NW2d 265 (2008), this Court held that two brothers acting in their capacities as trustees were entitled to recover attorney fees from trust assets for defending against a challenge to the validity of a trust amendment where the outcome of the litigation would determine which brother was the proper successor trustee and the terms of asset distribution. This Court explained:

> The issues and result of the litigation directly affected the trustee's administrative duties because the validity of the amendment determined the proper trust beneficiaries and asset distribution. Distribution of trust property to the proper beneficiary is a primary administrative duty of a trustee. [*Id*. at 133.]

As discussed, the amended petition to modify or reform the Trust was an attack on the validity of the Trust seeking to change the distribution of assets and the co-trustee, and the trustees had an obligation to enforce the Trust Agreement in connection with challenges to the validity of the Trust. It therefore follows that the trustees had a special right or substantial interest different from the citizenry at large in opposing Loren's amended petition. Accordingly, the trustees possessed standing to seek summary disposition of the amended petition.

B.  STATUTE OF LIMITATIONS

Loren next argues that the trial court erred in granting Barron's motion for summary disposition on Loren's petition to modify or reform the trust based on the expiration of the statute of the limitations. We disagree.

Loren asserts two arguments relating to trial court's application of the MTC statute of limitations to his petition for reformation of the Trust. As discussed earlier, MCL 700.7604(1) is a provision of the MTC that prescribes limitation periods for bringing a challenge to the validity of a trust. Loren concedes that he filed his petition to modify or reform the Trust more than two years after Gerald's death and more than six months after the statutorily prescribed notice was sent to Loren. Nonetheless, Loren first contends, the statute of limitations in MCL 700.7604(1) does not apply because his petition to modify or reform the Trust did not commence a judicial proceeding to contest the validity of the Trust. Rather, he argues, his petition was merely seeking to modify or reform the terms of the Trust rather than to invalidate the Trust. We disagree.

"In determining which period of limitations controls, we must first determine the true nature of the claim." *Adams v Adams (On Reconsideration)*, 276 Mich App 704, 710; 742 NW2d 399 (2007). "It is well settled that the gravamen of an action is determined by reading the complaint as a whole, and by looking beyond mere procedural labels to determine the exact nature of the claim." *Id*. at 710-711. "A plaintiff may not evade the appropriate limitation period by artful drafting. . . . The type of interest allegedly harmed is the focal point in determining which limitation period controls." *Simmons v Apex Drug Stores, Inc*, 201 Mich App 250, 253; 506 NW2d 562 (1993).

The procedural label that Loren affixed to his petition is one of modification or reformation. But in reading the petition as a whole, it is evident that the true nature of his claim was to contest the validity of the Trust. Loren alleged essentially the same facts in this petition as those used to support his petition to set aside the Trust. The reformation petition alleged that the October Trust was invalid due to a mistake of fact under which Gerald was acting when he executed the document. It asserted that the Trust failed to provide for a distribution of shares of GLP to Loren, which was in contravention of statements Gerald purportedly made after executing the Trust. The petition further alleged that the evidence showed that the October Trust was the product of a mistake of fact and that it should be reformed to conform to Gerald's intentions. It therefore requested modification or reformation of the Trust to provide that Loren shall receive 25% shares in the businesses; that Loren would become a member of the Investment Services board of directors; and that Barron would be terminated as a co-trustee.

Although phrased in terms of modification or reformation, the request for relief effectively sought a wholesale rewriting of the Trust to change its essential provisions concerning distribution of assets and the successor co-trustee. This relief was sought in part on the basis of the petition's allegation that the Trust was invalid as it was a product of Gerald's mistake of fact when he executed the document. The petition did not seek merely to correct a drafting error or to take account of a change of circumstances that occurred after the Trust was executed. Instead, the petition sought to change the most material provisions on the ground that Gerald's execution of the document was induced by a mistake of fact; this same underlying theory was asserted in Loren's petition to set aside the Trust that was dismissed under the statute

of limitations. Overall, the true gravamen of the action is that it contests the validity of the Trust. Therefore, the statute of limitations in MCL 700.7604(1) is applicable.

Loren also argues that the statute of limitations in MCL 700.7604(1) does not apply retroactively because he had an accrued or vested right to seek reformation of the October Trust before the MTC became effective. Loren's arguments on this issue are duplicative of his arguments in docket number 309796, discussed earlier. For the reasons stated above, we hold that the trial court properly dismissed Loren's reformation petition because it was barred by the statute of limitations in MCL 700.7604(1).

Leslie also raises two arguments related to the statute of limitations issue in her brief on appeal in docket number 310846. Leslie's arguments were addressed earlier in this opinion, and we adhere to our stated analysis. The trial court properly granted Barron's motion for summary disposition regarding Leslie's petition to modify or reform the Trust because the petition was barred by the MTC statute of limitations.

## V.  DOCKET NUMBER 318883

### A.  SUMMARY DISPOSITION

In docket number 318883, petitioners argue that the trial court erred in granting Barron's motion for summary disposition on their petition for removal of Barron as co-trustee. We disagree.

Again, a trial court's decision on a motion for summary disposition is reviewed de novo. *Hackel*, 298 Mich App at 315. Questions of statutory interpretation are reviewed de novo. *Trentadue*, 479 Mich at 386. "If the language in a statute is clear and unambiguous, this Court assumes that the Legislature intended its plain meaning, and the statute must be enforced as written. This Court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *Bay City*, 292 Mich App at 166-167 (quotation marks and citations omitted).

> We review de novo a probate court's construction and interpretation of the language used in a will or a trust. When construing a trust, a court's sole objective is to ascertain and give effect to the intent of the settlor. Absent ambiguity, the words of the trust document itself are the most indicative of the meaning and operation of the trust. [*In re Stillwell Trust*, 299 Mich App 289, 294; 829 NW2d 353 (2012) (quotation marks and citations omitted).]

The trial court properly granted Barron's motion for summary disposition regarding the removal petition.

A provision of the MTC, MCL 700.7706, provides, in relevant part:

(1) The settlor, a cotrustee, or a qualified trust beneficiary may request the court to remove a trustee, or a trustee may be removed by the court on its own initiative.

(2) The court may remove a trustee if 1 or more of the following occur:

(a) The trustee commits a serious breach of trust.

(b) Lack of cooperation among cotrustees substantially impairs the administration of the trust.

(c) Because of unfitness, unwillingness, or persistent failure of the trustee to administer the trust effectively, the court determines that removal of the trustee best serves the purposes of the trust.

(d) There has been a substantial change of circumstances, the court finds that removal of the trustee best serves the interests of the trust beneficiaries and is not inconsistent with a material purpose of the trust, and a suitable cotrustee or successor trustee is available.

On appeal, petitioners first present an unpreserved argument that the grounds for removal set forth in MCL 700.7706(2) are not exclusive and that a trustee may be removed on additional grounds recognized at common law. In *Kelsey v Detroit Trust Co*, 265 Mich 358, 361-362; 251 NW 555 (1933) (citations omitted), our Supreme Court articulated the grounds on which a trustee could be removed at common law:

> The right to remove trustees and to appoint successor trustees existed at common law. If, at common law a trustee could not effectually execute the trust, absconded, became bankrupt, misconducted himself, dealt with the trust fund for his own personal profit and advancement, committed a breach of trust, refused to apply the income as directed, failed to invest as directed, or acted adversely to the interests of the beneficiaries, neglected to use due care in protecting the trust estate, or was guilty of gross misconduct in the execution of the trust, or showed a lack of fidelity to the interests of the trust, or for any good cause, a trustee could be removed and a new trustee substituted in his place by a court of competent jurisdiction.

In the trial court, petitioners affirmatively sought removal on the basis of grounds listed in MCL 700.7706(2) and did not present the argument advanced on appeal that other grounds existing at common law provided an additional basis for removal. In any event, petitioners' unpreserved appellate contention lacks merit.

"It is axiomatic that the Legislature has the authority to abrogate the common law." *Trentadue*, 479 Mich at 389. "In general, where comprehensive legislation prescribes in detail a course of conduct to pursue and the parties and things affected, and designates specific limitations and exceptions, the Legislature will be found to have intended that the statute supersede and replace the common law dealing with the subject matter." *Id*. at 390 (quotation marks and citations omitted). Further, the MTC is to "be construed and applied to promote its underlying purposes and policies." MCL 700.8201(1). Among the purposes and policies of the MTC identified by the Legislature are "[t]o make more comprehensive and to clarify the law governing trusts in this state," MCL 700.8201(2)(a), and "[t]o foster certainty in the law so that settlors of trusts will have confidence that their instructions will be carried out as expressed in the terms of the trust," MCL 700.8201(2)(c).

In MCL 700.7706(2), the Legislature comprehensively codified a detailed list of grounds containing specific requirements for the removal of a trustee. The statutory grounds encompass a wide range of possible reasons for removing a trustee. By enacting this comprehensive provision, the Legislature expressed its intent that the statute supersede and replace the common-law grounds for removal. *Trentadue*, 479 Mich at 390. If myriad other grounds recognized at common law but not included in MCL 700.7706(2) were to continue to be used to remove trustees, it would undermine the Legislature's efforts to make more comprehensive and to clarify the law concerning removal of a trustee and to foster certainty in this area of law. Further, permitting removal under the common law for "any good cause" as set forth in *Kelsey*, 265 Mich at 362, would render ineffectual and essentially nullify the detailed, specific requirements for removal listed in MCL 700.7706(2). "Effect must be given to every word, phrase, and clause in a statute, and the court must avoid a construction that would render part of the statute surplusage or nugatory." *Book-Gilbert*, 302 Mich App at 541. Therefore, MCL 700.7706(2) superseded and replaced the common-law bases for removal.

Next, petitioners argue that the trial court erred in requiring that the grounds for removal be established by clear and convincing evidence in accordance with a provision of the October Trust. Paragraph 5 of the Trust provides, in relevant part:

> The Trustee shall not be liable . . . by reason of any action or omission, whether by the Trustee or any other fiduciary, unless the Trustee has acted in bad faith, notwithstanding [EPIC] or any other law. *In the absence of clear and convincing proof to the contrary, each Trustee shall be deemed* to have acted within the scope of the Trustee's authority; to have exercised reasonable care, diligence, and prudence; and *to have acted impartially as to all interested persons*. [Emphasis added.]

Petitioners argue that this provision of the Trust merely absolves the trustee of liability and does not address removal. Moreover, petitioners contend, the MTC bars enforcement of this Trust language. MCL 700.7908 provides:

> (1) A term of a trust relieving a trustee of liability for breach of trust is unenforceable to the extent that either of the following applies:
>
> (a) The term relieves the trustee of liability for breach of trust committed in bad faith or with reckless indifference to the purposes of the trust or the interests of the trust beneficiaries.
>
> (b) The term was inserted as the result of an abuse by the trustee of a fiduciary or confidential relationship to the settlor.

Petitioners further cite MCL 700.7105(2)(n), which provides that the terms of a trust prevail over any provision of the MTC except, *inter alia*, "[t]he power of the court to take action and exercise jurisdiction." Petitioners also argue that the trial court improperly weighed evidence in the summary disposition context.

Petitioners' arguments on this point are ultimately unavailing. We agree with petitioners that ¶ 5 of the Trust is inapplicable. When read in context, the requirement in ¶ 5 of clear and

convincing evidence to prove that the trustee failed to act impartially is in reference to a trustee's *liability* for any act or omission. The term "liable" refers to legal responsibility. *Random House Webster's College Dictionary* (2001). The issue here does not pertain to holding a trustee legally responsible but instead to *the removal of* a trustee. However, although the trial court briefly referenced the clear and convincing evidence standard, the court's decision overall reflects that it found *no* evidence or facts to establish necessary elements of grounds for removal. In particular, the court found that petitioners did not present any facts from which an inference could be drawn that their interests as beneficiaries had been detrimentally affected and that there was no evidence of harm to the Trust corpus. The court also noted that there was no evidence that any conflict of interest on Barron's part harmed petitioners as Trust beneficiaries or affected Trust administration. In other words, the court indicated that any bias or partiality on Barron's part did not affect the Trust corpus or harm petitioners as beneficiaries, which, as discussed later, must be established to warrant removal. Therefore, although the court did briefly reference the clear and convincing evidence standard, the reference was harmless given the court's finding that there was *no* evidence to support conditions necessary for removal. And because the trial court found that there was *no* evidence to satisfy these requirements, it did not improperly weigh evidence.

Next, petitioners contend that Barron's purported partiality in favor of some beneficiaries and his hostility toward petitioners is evidence of his "unfitness," thereby comprising a proper ground for removal under MCL 700.7706(2)(c). We disagree. Petitioners challenge Barron's actions in defending against petitioners' petitions to modify or reform the Trust. Petitioners repeat the arguments Loren advanced in connection with whether Barron possessed standing. As we explained, the petitions to modify or reform the Trust explicitly challenged the validity of the Trust. Barron was obligated under the terms of the Trust to enforce the Trust Agreement in actions challenging the validity of the Trust Agreement, and he was required by statutory provisions to administer the Trust in accordance with its terms and purposes and was permitted to exercise all of the powers conferred by the terms of the Trust. Therefore, petitioners' argument that Barron exhibited partiality favoring some beneficiaries or hostility toward petitioners because he opposed their petitions to modify or reform the Trust is devoid of merit.

Even assuming, however, that Barron was hostile toward petitioners or partial in favor of other beneficiaries, petitioners have not established that such hostility or partiality comprised unfitness *to administer the Trust effectively* or that removal of Barron best serves the purposes of the Trust, both of which must be shown in order to remove Barron, under the plain language of MCL 700.7706(2)(c). Again, there is no evidence that the Trust corpus was in any way affected by Barron's alleged hostility or partiality or that petitioners' interests as Trust beneficiaries, as opposed to employees or associates of GLP or sons of Gerald, were affected.

Petitioners next argue that Barron engaged in conduct that revealed a conflict of interest; they assert that Barron's actions of replacing himself on the GLP board of directors with someone subject to his control and to let another attorney take over the circuit court litigation that Barron initiated on GLP's behalf against Loren did not render the conflict of interest moot. Petitioners' arguments are unconvincing. MCL 700.7706(2) does not list a conflict of interest by itself as a ground for removal. Assuming that a conflict of interest could comprise "unfitness" under MCL 700.7706(2)(c), petitioners have again failed to demonstrate that any conflicts affected the administration of the Trust or that removal of Barron best serves the purposes of the Trust. Conflicts of interest or hostility are not grounds for removal of a trustee or a personal

representative of an estate unless the administration of the trust or estate was affected. See *In re Kramek Estate*, 268 Mich App 565, 576; 710 NW2d 753 (2005); *In re Sumpter Estate*, 166 Mich App 48, 52-57; 419 NW2d 765 (1988); *In re Gerber Trust*, 117 Mich App 1, 14; 323 NW2d 567 (1982). Again, there is no evidence of any mismanagement or negative effect on the administration of the Trust.

Moreover, Barron did not exhibit a conflict of interest by serving as a director of GLP for a period of time. Paragraph 6C(2)(a)(x) of the Trust Agreement authorized the co-trustees to act as entity owners, including by appointing a co-trustee as a director. The trial court expressed some concern about Barron's acting as an attorney for GLP in filing the circuit court lawsuit against Loren but ultimately concluded that Barron's resignation as attorney shortly after filing the lawsuit and the circuit court's ultimate disposition in favor of GLP's position ameliorated any concerns. The circuit court action was initiated because of what were perceived to be threats by Loren to take damaging actions against GLP. The mere existence of litigation between a trustee and a beneficiary is not a sufficient reason for removal. See *Sumpter*, 166 Mich App at 56; *Gerber*, 117 Mich App at 14. Overall, the trial court properly concluded that the alleged conflicts of interest do not require removal given the absence of evidence of any effect on Trust administration or the interests of the beneficiaries.

Thus, the trial court properly granted Barron's motion for summary disposition regarding the removal petition. For the same reasons, we further hold that the trial court did not plainly err in failing to grant summary disposition to petitioners under MCR 2.116(A) or (I)(2).

Affirmed.


/s/ Karen M. Fort Hood
/s/ Joel P. Hoekstra